## VAN DOLSEN *v.* MAYOR, ETC., OF NEW YORK, and others.

(*Circuit Court, S. D. New York.* August 30, 1883.)

JURISDICTION—LEASE OF REAL ESTATE TO CONFER—TITLE TO WATER FRONT.

The owner of certain dock property, who derived his title from the British crown through a grant of land bounded by the "water side," in anticipation of the action of the defendants, leased the same to plaintiff, who was a citizen of another state. Defendants, who derived their title also from the crown, attempted, under authority of the laws of the state of New York, to fill into the water, and build a new water front before the landing place, and cut it off from the water. *Held* that, as defendants were grantees of the crown, they were limited as if they had made the grant the crown had made, and could not grant land bounded on a way, and afterwards remove the way without compensating the parties injured. *Held, further,* that, although the principal motive in making the lease was to enable the plaintiff to sue in the circuit court of the United States, as it did not appear that the lease was not real and effectual to pass the title of the term to plaintiff, the suit involved a controversy properly within the jurisdiction of the court.

In Equity.

*James W. Gerard,* for orator.

*James C. Carter,* for defendants.

WHEELER, J. This cause has been heard upon pleadings and proofs, from which it appears that while the whole proprietary interest in all the land and water now in question was vested in the British crown, Sir Edmund Andross, royal governor of the province of New York, granted, in 1676, to Gabriell Curtessee a tract of land on the east side of Manhattan island, bounded south-east by the river, and in 1677 to David Deffore another tract adjoining this, bounded "by ye water side." These lands, between now Forty-ninth and Fifty-first streets, on the water front of which there has been, and been used for many years, a landing place, are the property of Gerard and James W. Beckman, who leased the front to the orator for two years from November 11, 1880. The defendants are attempting, under authority of grants from, and laws of, the state of New York, to fill into the water and build a new water front before this landing place, and cut it off from the water. This bill is brought to restrain such action, and for an account of damages. The owners have been accustomed to lease these premises for dock purposes before. They apprehended such action as has been begun by the defendants, and a controlling reason for making this lease was the fact that the orator is a citizen of another state, and could, as was supposed, proceed against the defendants in this court for any inteference with his rights. It is objected that this controversy is really between the lessors and the defendants, who are citizens of the same state, and not between the orator and the defendants, and that, therefore, the suit does not really involve a controversy properly within the jurisdiction of this court, and should be proceeded with no further, but dismissed, under section 5, act of

1875, (1 Supp. Rev. St. 175.) If the lease was real and not fictitious, the wrong, if any, during the term would be to the orator, and, not to the lessors. Nothing is involved now except what occurred during that time. No right can be passed upon but his. If he has none, and the lessors are merely using his name to try their rights, the suit should be dismissed under the provisions of that act. It would not seem that the fact that he acted in view of the remedies afforded him by the laws of the land, and of all remedies under all the laws, could deprive him of any of the benefits or remedies of any of the laws of either jurisdiction. *McDonald* v. *Smalley*, 1 Pet. 620. The question in a case like this seems to be the same as before the act, and to be, as stated by Chief Justice MARSHALL in that case, whether the transaction was real or fictitious, although dismissing the bill without proceeding further may be more summary. Upon this question the evidence, although full as to the motive, is that the lease was real, or, at most, does not show that it was not real and effectual to pass the title of the term to the orator. There is, therefore, no good ground apparent for dismissing the orator's case without passing upon his rights involved in it.

The original grants are shown by entries and are not set forth at large; and there are several breaks in the chain of title in the public records, but the chain is perfect since very ancient times, and references are made from subsequent to prior grants, and from thence to the original grants, so as to be traceable throughout, and, in connection with peaceable possession shown beyond memory, the title from the crown by the grant of the royal governor down to the orator satisfactorily appears. *Mayor of Kingston* v. *Horner*, Cowp. 102; *Roe* v. *Ireland*, 11 East, 280; *Read* v. *Brookman*, 3 Term R. 159; *Fletcher* v. *Peck*, 6 Cranch, 87; 1 Greenl. Ev. § 45. The defendants, the mayor, etc., of New York, derive their title from the charter of Thomas Dongan, royal governor in 1686, granting all the lands about the island to low-water mark, reserving prior grants made within 20 years, and from subsequent grants from the crown and state extending further out under water. The rights of the crown at the revolution became vested in the state. *Martin* v. *Waddell*, 16 Pet. 367. Thus what was granted to Curtessee and Deffore in 1676 and 1677, in respect to the front of this land, has come to the orator during his term, and what remained to the crown after those grants has come to the defendants. The river by which the grant to Curtessee, and the water by the side of which the grant to Deffore were bounded, is the East river, through which the tide ebbs and flows, and which is a great highway for all people with all kinds of water-craft. The shore at this place was so steep that there was little or no difference, laterally, between high and low water, and vessels could always land there without artificial docks or wharves. The owners, and others by their permission, could and did pass freely from the land on to the river, and from the river on to the land; and could always do so while the river should remain

where, in the grants, it was described to be. There is no question but that the grants stopped at high-water mark, and left the right to the soil under water beyond in the crown, subject to the right of the public to the river as a highway over it. Bract. bk. 1, *c.* 12, p. 5; *Rex* v. *Smith*, 2 Doug. 441; *Com.* v. *Charlestown*, 1 Pick. 180; *Martin* v. *Waddell*, 16 Pet. 367. This highway was a way to this land when the successive grantees took it, and when the orator took his lease of it. So far as the defendants could have any right to it, or to the soil under it, the original grantor, the crown, had the same right. The crown, after *Magna Charta*, could not grant land bounded on a way, and afterwards, without compensation, remove the way, any more than an individual could. The defendants, as grantees from and under the crown, are limited as if they had made the grant which the crown made. They could not grant land to a way on land and afterwards remove the way. *Story* v. *New York Elevated Ry. Co.* 90 N. Y. 122. The title to the land under the way in that case came from the same source as the title to the land under this water-way, and in the same manner. If the authority of the state and city was not equal to the obstruction of that way, it is not apparent how they can be adequate to the total removal of this one. That is the latest decision, so far as is now known, of the highest court of the state upon the subject, and, to the extent of the principles involved there, must be considered to be the law of the state. The right of a land-owner to enjoy the way over navigable water adjoining his land seems to have been several times fully recognized by the supreme court. *Dutton* v. *Strong*, 1 Black, 25; *Railroad Co.* v. *Schurmier*, 7 Wall. 272: *Yates* v. *Milwaukee*, 10 Wall. 497. In the latter case Mr. Justice MILLER expressly states the proposition to have been decided in the two former. And in delivering the opinion of the court he further says:

" This riparian right is property, and is valuable, and though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired. It is a right of which, when once vested, the owner can only be deprived in accordance with established law, and, if necessary, that it be taken for the public good, upon due compensation."

This doctrine does not appear to have been overruled.

In *Weber* v. *Harbor Com'rs*, 18 Wall. 57, Mr. Justice FIELD, in the opinion of the court, says:

" It is unnecessary for the disposition of this case to question the doctrine that a riparian proprietor, whose land is bounded by a navigable stream, has the right of access to the navigable part of the stream in front of his land, and to construct a wharf or pier projecting into the stream, for his own use, or the use of others, subject to such general rules and regulations as the legislature may prescribe for the protection of the public, as was held in *Yates* v. *Milwaukee*, 10 Wall. 497. On the contrary, we recognize the correctness of the doctrine as stated and affirmed in that case."

*Barney* v. *Keokuk*, 94 U. S. 324, was an action of ejectment, and involved the right of soil, and not a right of way, and what is there

said appears to have been said in that view. This seems to be the English doctrine now. *Lyon* v. *Fishmonger's Co.* L. R. 1 App. Cas. 662; 35 Law T. Rep. (N. S.) 569. In this case the lord chancellor appears to have said: "I cannot entertain any doubt that the riparian owner on a navigable river, in addition to the right connected with navigation to which he is entitled as one of the public, retains his rights as an ordinary riparian owner, underlying and controlled by, but not extinguished by, the public right of navigation;" and Lord SELBORNE: "For the purpose of a riparian proprietor, lateral contact with a stream is, *jure naturæ,* as good as vertical right. It is true that the bank of a tidal river, of which the foreshore is left bare at low water, is not always in contact with the flow of the stream, but it is in such contact for a great part of every day, in the ordinary and regular course of nature, which is an amply sufficient foundation for a natural riparian right." The defendants are not proceeding to take such rights for public use upon making compensation, but are proceeding arbitrarily in denial of the existence of any such rights. These cases and principles seem to entitle the orator to relief. There are numerous cases which, standing alone, would support the claims of the defendants. *Lansing* v. *Smith,* 4 Wend. 9; *Gould* v. *Hudson River R. Co.* 6 N. Y. 522; *Furman* v. *The Mayor, etc.,* 10 N. Y. 567; *Stevens* v. *Paterson, etc., R. Co.* 5 Vroom, 532; 10 Amer. Law Reg. 165. They are not considered to be controlling, in view of the later cases referred to.

The orator's title has expired now, but had not at the commencement of the suit nor at the time of hearing. The delay would not take away any right to relief which he then had, although his right to continued relief might cease. He has no occasion now for the continuance of an injunction, but may be entitled to an account for damages.

Let there be a decree for the orator accordingly, with costs.

See *Fountain* v. *Town of Angelica,* 12 FED. REP. 8, note, 10.