[Filed June 13, 1887.]

## JOHN HOBSON ET AL., RESPONDENTS, v. THOMAS MONTEITH ET AL., APPELLANTS.

TOWN PLAT.—One McClure, in 1847, laid out the town site of Astoria, establishing therein a street known as "Hamilton Street." Subsequently, Cyrus Olney, having bought the land, prepared and had recorded a second map of said town known as "the plat or map of McClure's Astoria, as extended by Cyrus Olney." By said map, Hamilton Street was abolished and laid out as lots. Prior to the making of the latter map, Olney sold to one Monteith certain blocks described and numbered in the McClure map, which adjoined the said Hamilton Street. Upon a suit brought to enjoin the erection of buildings upon Hamilton Street by grantees of Olney; *held* (1) That the effect of the map or plat must be determined from the map itself, and oral testimony cannot be introduced to show any intent on the part of Olney when he made it. (2) That whether a change in the original plat of the town of Astoria, or simply an extension of the town was made by Olney's map, must be determined by an examination of the map, not from the name given it. (3) That at the time the plat was made the title to the land lying between high and low-water mark was in the State, and no one had any right in it to convey, though the riparian owner might, so far as he himself was concerned, dedicate it as a street, and so conduct himself as to be estopped from denying the dedication. (4) That the act of the legislature granting the fee of the streets in Astoria to the city only contemplated such streets as were in existence, not such as had been vacated.

APPEAL from Clatsop County.   Reversed.

*Williams, Durham & Thompson, C. H. Page,* and *J. Q. A. Bowlby,* for Appellants.

The map of McClure is a nullity, in so far as it attempts to dedicate land between high and low-water mark. *(Heiple* v. *City of E. P.* 13 Or. 103 ; *Hinman* v. *Warren,* 6 Or. 408.)

When Olney made his maps, no lots or blocks had been sold according to the McClure plat except to Monteith, and no acceptance of the street had ever been made by the public, and Olney had the right to make the map he did. *(Holdane* v. *Cold Spring,* 21 N. Y. 474.)

No claim can be made on behalf of the city, as the city authorities have treated and taxed the lots as the property of Monteith, and thereby recognized the Olney plat. *(Bell* v. *Burlington,* 27 N. W. Rep. 245.)

Plaintiffs cannot attack the legality or effect of the Olney map, because they and their grantors purchased and took their deeds

according to its plans and descriptions. (Code, 278; *Morgan* v. *Moore*, 3 Gray, 319; *Carver* v. *Jackson*, 4 Peters, 85; *Crane* v. *Morris*, 6 Peters, 598; *Chapman* v. *Pollock*, 11 Pac. Rep. 768; 1 Greenleaf on Evidence, § 23.)

*Fulton Bros.*, and *Stott, Waldo, Smith & Boise*, for Respondents.

If McClure had a right to lay out a street, it could only be vacated by proceedings in accordance with statute. (Code, pp. 777, 778.)

Acceptance by a city is not necessary to perfect a dedication of a street. (*Grogan* v. *Hayard*, 4 Fed. Rep. 165; Dillon on Municipal Corporations, § 505.)

The town site laid out by McClure was partly on tide-land, and the street in question was tide-land.

THAYER, J.— The respondents herein brought suit in the Circuit Court of Clatsop County, to restrain the appellants from building upon a certain strip of land alleged to be one of the streets in the city of Astoria, which they designate as " Hamilton Street," and from thereby obstructing the alleged street. They own certain lots in severalty abutting upon the said strip of land, and base their right of suit upon the grounds that the threatened building upon, and obstructing the pretended street, will work an especial injury to them, differing from that suffered in consequence thereof by the general public. The appellants claim that the *locus in quo* is not a street, but private property belonging to the appellant R. S. Strahan, as assignee of the estate of the appellant Thomas Monteith. The main question in controversy is, whether the strip of land is such street or not; though the appellants' counsel contended at the hearing that the suit could not be maintained until the legal title to the property was settled in a court of law; and that the respondents had failed to show by their allegations and proofs that any such wrong to their rights was threatened, as would authorize the interposition of a court of equity in their behalf. The latter question is by no means free from doubt, but I pass it over for the present in order to consider the general merits of the case. The parties to

the suit filed a written stipulation in the case, in which, among other things, they stipulated, ".that the land embraced in the tract alleged in the complaint as Hamilton Street is tide-land, and lies wholly below and north of the line of ordinary high tide in the Columbia River, and south of the north line of the donation land claim of John McClure, as described in the patent from the United States to John McClure." The patent to the claim, it appears, was not issued until 1866, but the settlement upon it and residence and cultivation were had long prior thereto; that after such settlement, residence, and cultivation, the said John McClure laid out a town partly upon his claim and partly upon the tide-land in front thereof, known as the town of Astoria, and constituting now a part of the city of Astoria; that he made a plat thereof, which was filed in the then office of the recorder of the county of Clatsop, on the sixth day of February, 1854, and duly recorded in said office, and was and is known as "John McClure's plat or map" of the town of Astoria; that among the streets indicated upon the said plat, and dedicated thereby to the public, was a street designated as "Hamilton Street"; that in 1858, the said John McClure sold the said donation claim to Cyrus Olney, and conveyed to him all his right, title, and interest in the same, with the appurtenances thereunto belonging, by deed of conveyance duly executed and containing covenants of further assurance; that on the twenty-first day of December, 1869, the said Cyrus Olney executed to the appellant Thomas Monteith a deed of conveyance to real property, described therein as situate, lying, and being in the town of Astoria, county of Clatsop, and State of Oregon, and known and designated on John McClure's recorded plat of said town as all of block 61, all of block 58, and all the land and wharfing privileges north of the east half of block 58; together with certain other lands, and all and singular, the tenements, hereditaments, and appurtenances thereunto belonging, etc. Said Hamilton Street, as designated on the McClure plat, extends from low water in the Columbia River south, along the east side of blocks, numbered thereon, 58, 61, and 64; and between the same and a tier of blocks immediately east therefrom, numbered thereon, 57,

62, and 63, each of said blocks except No. 57, which is indicated as fractional, is represented as containing eight lots, of fifty by one hundred feet each, fronting upon streets at right angles with Hamilton Street, and said Hamilton Street is fifty feet in width; that thereafter, and in 1867, the said Cyrus Olney prepared another plat of said town of Astoria, and extended the limits thereof south and west so as to include a large amount of additional territory in those directions; extended it east so as to include two tiers of lots, and a fifty-foot strip for a street; and on the north, so as to make said block 57 a full block, and add thereto a street and fractional block, the latter being numbered 56½; that he represented said blocks, 58, 61, and 64, as being seven lots in width from east to west, and two lots in length from north to south, which representation was so made by including said Hamilton Street as two of such lots, 5 and 10, in each of said blocks, and adding a tier of two lots adjoining the same on the east, and continuing a tier of blocks of the same width, and composing the same number of lots, south across his entire plat; that he also represented to the east of the fourteen lot blocks another tier of blocks of the regular size, extending from north to south, a street between the same of the regular width, and said fourteen lot blocks, and another street to the east of said tier of regular sized blocks added, extending from north to south, and upon which the latter blocks abutted. That the said Olney, on the first day of May, 1867, filed the said plat for record in the office of the clerk of said county of Clatsop, and the same was thereupon duly recorded therein, and designated as the plat or map of "McClure's Astoria as extended by Cyrus Olney." It is not shown that any lots adjacent to said Hamilton Street had been sold prior to the record of the Olney plat, except those sold to Monteith, and the appellants claim that he acquiesced in the change Olney made in the original plat.

The respondents, however, insist that he strenuously objected to it in the outset, which I have no doubt is the fact. But however that may be, we find that on the fourteenth day of May, 1879, he conveyed to E. D. Heatley, J. W. Grace, and J. M. TenBosch, trustees of the estate of M. J. Kinney, among other

property, certain of the lots in said blocks 58 and 61, as represented on the Olney plat, and described the same in the deed of conveyance as lying and being in the city of Astoria, "as laid out by John McClure and extended by Cyrus Olney." It is evident from this that he had acquiesced in the Olney plat at that time. It also appears that one of the principal respondents, the Pythian Land Association, obtained the title to the lot claimed by that company ostensibly from the said trustees of Kinney, by deed which bears date June 1, 1881, and which is a mere quitclaim and release in form, and describes the premises conveyed as lot numbered 4 in block numbered 61 in the city of Astoria, in the county of Clatsop, and in the State of Oregon, "said city lot the same as laid off by John McClure and extended by Cyrus Olney according to the plats on file in the office of the county clerk." The title of John Hobson, another of the principal respondents, is derived from Warren's heirs by deed dated September 4, 1877. Their title came from the State by deed dated April 25, 1877. Said deeds purport to convey lot 9 in block 58, "according to the plat or map made and recorded by John McClure and extended by Cyrus Olney." It also stipulated in the written stipulation made and filed as before mentioned, "that the respondent plaintiff, Theodore Broenser, is the owner of lot No. 4, block 64, and that his claim of title is from Cyrus Olney subsequent to the second day of May, 1867 ; and that the conveyances described said lot as being lot No. 4, of block No. 64, according to the town of Astoria, as laid out and recorded by John McClure, and extended by Cyrus Olney, and that the immediate grantors of said Broenser purchased said lot 4 of block 64 from the State of Oregon as tide-land, April 28, 1879, and said lot is described in the deed as above." These three lots — lot 4 in block 61, lot 9 in block 58, and lot 4 in block 64 — are the only ones, as I understand, represented in this suit; and I am unable to ascertain how the present owners of them have any grounds to complain of the alleged street being used as private property. At the time various owners purchased the several lots referred to, the Olney plat was on record, and they severally took under a conveyance recognizing it. The respond-

ents' counsel contend that the latter plat was no more than an
extension of the McClure plat, and not a change of it.   The
name given to it was "the plat or map of John McClure's
Astoria as extended by Cyrus Olney"; that might indicate that it
made no change in the original plat, only an extension of it; but
whether it did or not must be determined by the plat itself and
not from the name.   A name may import a kind or quality quite
different from that which the thing it is applied to possesses.
Cyrus Olney, at the time he made and filed his plat of the town,
was master of the situation; no one not having any vested inter-
est to be affected thereby had any right to object to his preparing
and recording any kind of plat he might devise, or of his giving
it any name he saw fit.   And a person having an interest that
might be affected in consequence had full liberty to waive his
objection thereto.   Neither McClure nor Olney had any such title
to the part of the town site between high and low-water mark, as
would enable them to grant an interest in it to any one.   The
public already had the *jus publicum* for passage and navigation,
and the general title vested immediately in the State, as soon as
that institution was formed and admitted into the Union.   The
donation claimant, nor his grantee, had any interest in the land
below high-water mark in front of the claim to dispose of, except
his riparian rights, though he might, if he undertook to dedi-
cate it to the public for a street or other use, estop himself from
diverting it from such use as against one who had in good faith
acted upon the dedication.   But the respondents' interest in the
property did not attach until long after the Olney plat was
recorded, and was acquired with a full knowledge of the fact.
Their counsel claim, however, that Olney did not intend to dis-
continue said street, and introduced his oral statements, made
about the time the plat was prepared, to show that such was not
his intention.   The plat was duly acknowledged by Olney, and
deliberately made by him and placed upon record, and is the
best evidence as to what his intention was.   It would hardly do
to admit parol evidence to change its effect.   It is as high proof
as a deed, and cannot be varied by such testimony in a collat-
eral suit without violating well-established rules of evidence.

As to the evidence of what Monteith said at the time said plat was made about Olney having changed the plat, and that "there was a street all around his block when he bought it, and he didn't propose to have it changed," nothing can be claimed in aid of the respondents. It is immaterial what Monteith may have said at any time, unless it was intended to induce the respondents to make purchase of their lots in question, and upon the faith of what he said for that purpose they did make such purchase. If he had said enough to estop him from claiming the lots designated in the said strip of land represented on the McClure plat as a street, the respondents might be able to take advantage of it, but that is not pretended. It does not appear how long Monteith's dissatisfaction continued. He subsequently, in 1875, made application to the State board for the sale of school and university lands, to purchase under the swamp and tide-land law the lots numbered 5 and 10 in block 61 and 58, and lot 10 in block $56\frac{1}{2}$, as shown in Olney's plat, and which constituted a part of said Hamilton Street, as shown on McClure's plat; and thereafter, and on the 11th of June, 1877, said board executed to him in the name of the State a deed to the same. The respondents' counsel further claim that the legislative assembly of the State, by the act incorporating the city of Astoria, passed in 1876, granting to said city the fee to all recorded streets therein below high-water mark for the use of the public, granted the fee of Hamilton Street as represented on the McClure plat, as that was at the time, as they claim, a recorded street therein, coming within the description embraced in the grant. The language of the act relating to that subject as set out in the respondents' brief is as follows: "The fee of all streets now within the city, recorded, between high and low water of the Columbia River, is granted to the city, and all streets within the city limits and at right angles to the Columbia River are extended to the ship's channel for the use of the public, and the fee of the same is hereby vested in the city of Astoria, . . . . and shall forever remain open as thoroughfares for the use of the public."

Two questions are presented by this act. The first one is its construction. Unless the legislature intended by it to grant to

the city of Astoria the land within the boundaries of every street therein as shown upon every recorded plat of the town that had ever been made, it did not necessarily assure to the city the fee of said Hamilton Street as indicated on the McClure plat. The second one is, whether the grant, however extensive or limited in its construction, vests the fee of any street in the city of Astoria until its terms, relating to such streets, are accepted by the city? Ordinarily a grant has no effect until accepted by the grantee. The counsel for the respondents maintain, however, that the one in question is distinguishable from an ordinary dedication of streets in a town; that the act of the legislature by its own force made what is known as Hamilton Street a public street, to remain forever open " as a thoroughfare for the use of the public." I am inclined to think said counsel's view is correct as to streets coming within the purview of the act; but I doubt very much whether said Hamilton Street, so called, was included within such grant. The language of the granting clause, " all streets now within the city, recorded, between high and low water of the Columbia river," does not necessarily include it. It is true that the McClure plat represented it as such street, and that said plat was recorded, but Olney's plat superseded it as effectually as an amended pleading supersedes the original. At the date of the act, the latter plat had been recorded nineteen years, and the legislature evidently intended by the act to grant the fee of streets then recognized as public streets within the town. Olney's plat added a large number of streets and blocks to the town. It was systematically devised, and made some changes in the former plat; but they were evidently made to carry out a general plan. Blocks 58, 61, and 64, instead of being left four lots wide were made seven lots in width, and a tier of blocks was laid out across the entire plat in harmony therewith. Said plat was evidently recognized by the inhabitants of the town. Every deed under which the respondents claim title, coming from individuals or the State, refers to it as descriptive of the property conveyed. To re-establish said Hamilton Street would create a second tier of blocks two lots in width, from off the east side of said blocks 56½, 58, 61, and 64,

and destroy the harmony of those blocks with the tier extending south therefrom. The legislature had no intention, in my opinion, to so disarrange the affairs of the town, and never meant to grant the land designated in said blocks 56½, 58, 61, and 64, as lots 5 and 10, in each block, to the city of Astoria, as a street, "to be forever open as a public thoroughfare," or to provide in regard to any of the streets except such as were recognized at the date of the act as public streets in said city. It would not be a general thoroughfare if opened; would only extend across four blocks and merely afford a local benefit. I am of the opinion, therefore, that the equities are with the appellants. This view renders it unnecessary to consider the other point referred to in the out-set of this opinion. The decree appealed from will be reversed and the case remanded to the Circuit Court, with directions to dismiss the complaint.

STRAHAN, J., was a party to the record in this cause, and took no part in its decision.