Submitted on briefs March 18, affirmed March 25, 1919.

# HANSON v. THORNTON.

(179 Pac. 494.)

**Boundaries—Meander Lines—Lake.**

1. The fact that insignificant points of land are left between meander line and water will not impeach a survey, or confine an adjacent upland owner within limits indicated by meander lines, but waters of lake itself will constitute the true boundary.

[As to waters and watercourses as boundaries, see notes in 30 Am. Dec. 286; 27 Am. St. Rep. 56.]

**Navigable Waters—Accretion—Rights of Land Owner.**

2. To enable a land owner to acquire title to land between meander line and water's edge, recession of water must be gradual and imperceptible.

**Navigable Waters—"Accretion"—"Reliction."**

3. Technically speaking, land uncovered by a gradual subsidence of water is not an "accretion," but a "reliction," but the terms are often used interchangeably, and law relating to accretions applies in all its features to relictions.

**Navigable Waters—Reliction—"Imperceptible."**

4. Reliction is "imperceptible" within rule relating to acquisition of title, when it is not discernible in its progress, though fact that there has been an increase may be perceptible year by year or at shorter intervals.

**Navigable Waters—"Riparian Rights."**

5. "Riparian rights" are not a mere shadowy privilege, but a substantial property right, the right of access to and the usufruct in the water.

**Navigable Waters—Reliction—Evidence.**

6. In an action involving title to land once covered by water, evidence *held* insufficient to show that recession of water was due to artificial diversion of streams emptying into the lake.

From Lake: L. F. CONN, Judge.

In Banc.

This is a suit to enjoin defendant Thornton from repeated trespasses upon certain lands of plaintiff, and to quiet the title of plaintiff to said land. The complaint alleges, among other matters, that:

"For more than twenty years last past, plaintiff and his predecessors in interest have been continuously the

owners and entitled to the possession of the following described real property, situated in the County of Lake, State of Oregon, to wit:

"Beginning at a point 1650 feet South and 1320 feet East from the Northwest corner of Section 17, Township 41 South, Range 19 East of the Willamette Meridian, in Lake County, Oregon, thence running East to the edge of the waters of Goose Lake on its West shore; thence Southerly following the edge of the waters of Goose Lake on its West shore to a point where the State line between the States of Oregon and California intersects the water's edge of Goose Lake on its West shore; thence West along said State line to the Southwest corner of Lot 3 in Section 20, Township 41 South, Range 19 East of the Willamette Meridian; thence North along the West boundary line of Lot 3 in said Section 20, to the South boundary line of Lot 2 in said Section 20; thence West to the Southwest corner of said Lot 2; thence North along the West boundary line of said Lot 2 to the South boundary line of Lot 1 in said Section 20; thence West along the south boundary line of said Lot 1 to the Southwest corner of said Lot 1; thence North to the point of beginning.

"Heretofore during the month of December, 1917, the above named defendant A. L. Thornton, unlawfully, wrongfully, and without right or claim of right, repeatedly entered and trespassed upon the above described lands of plaintiff, and cut down, destroyed and otherwise injured valuable trees and shrubbery growing upon said premises, and dug into and threw up the soil of said premises, and threatens to and will, unless restrained by this Court, continue said trespasses and depredations, to the irreparable injury of plaintiff."

There are further allegations tending to show irreparable injury and the usual prayer for equitable relief. Appellant answered admitting that he had entered upon the lands described, but denied that such entry was unlawful or that he had thereby committed a trespass, and plead as justification for such entry,

"That the lands in plaintiff's complaint described are unsurveyed public lands of the United States of America; that said lands are not the property of plaintiff; that said lands lie and are situated between the meander line of Goose Lake, and the water's edge of said Lake on the Western shore thereof; that in 1872 one J. H. Evans, as Deputy United States Surveyor for Oregon, pretended to make a survey of Sections 17 and 20 in Township 41 South, Range 19, E. W. M., in Oregon, which are the sections lying immediately West of and abutting on the land described in plaintiff's Complaint, and said Deputy Surveyor, at said time platted and reported said sections as fractional sections meandered by Goose Lake, while in truth there was a large area of land, to-wit: East of the land in plaintiff's Complaint described, lying between said meander line and the actual water's edge of Goose Lake; that said Deputy Surveyor fraudulently failed to examine the land lying between said meander line and Goose Lake, and fraudulently failed to run said meander line approximately along the actual water's edge of Goose Lake, and fraudulently failed to include in said Sections 17 and 20, said land, which defendant avers was then not covered by the waters of Goose Lake; that because said land was fraudulently omitted from said survey, it is now, and was at the time of defendant's entry thereon, public unsurveyed land of the United States of America and was and is subject to entry by defendant; that defendant has not exercised or used his public land rights, and claims the right to go upon, and enter said land, under the homestead laws.

"For a further answer to said Complaint defendant here repeats the allegations contained in his first further answer herein, and alleges that by mistake as to the actual conditions existing along the shore of Goose Lake, abutting upon Sections 17 and 20, Township 41 South, Range 19, E. W. M., the said Deputy Surveyor, failed to include in said survey in plaintiff's Complaint described, that said land is and then was larger in extent than the fractional lots of said Sections 17 and 20, abutting upon said land; that because of said mis-

take, omission of said land from said survey said land is now public unsurveyed land of the United States of America, and defendant has and claims the right to go upon and enter said land under the homestead laws.''

Plaintiff replied by appropriate denials of any fraud or mistake in the surveys, and alleged in substance:

That in the year 1872 the United States government caused a survey of fractional Sections 19 and 20 in township 41, and that at said date, said fractional sections abutted upon the shore of Goose Lake, then and now a body of water about thirty-five miles long and twelve miles wide, and that the meander line of said survey was run along a high gravel bank, washed by the waters of the lake and extending along the whole front of said fractional sections.

That said survey was made in good faith without fraud or mistake and did not exclude from the surveyed land any lands not covered by the waters of Goose Lake, except possibly some small irregular points of lands aggregating less than an acre in extent; that said survey was correctly platted and delineated on the map and was approved by the commissioner of the general land office and became and is the official survey. That thereafter in 1889, a resurvey was ordered of portions of the land, and as a result the meander line original survey in front of Sections 17 and 20 was found to be correct and no resurvey was made and thereafter by patent from the government and mesne conveyances from the patentees and their successors, the title to said fractional sections and to all land lying between the meander line and the actual waters of Goose Lake became vested in plaintiff.

That for more than ten years last past the waters of Goose Lake have gradually receded from natural causes, and the recession of said waters has laid bare

a narrow strip of land between the meander line and the actual water's edge and that this strip is the land upon which defendant has entered. That the title thereto is in plaintiff; that said lake is a navigable body of water; that sections 17 and 20 are valuable because they abut thereon, much of their value being on account of the shore privileges; that the strip of land uncovered by the natural recession of the waters of the lake, extends along the entire frontage of sections 17 and 20, and if defendant's contention is sustained, plaintiff will no longer have access to the waters of the lake from said sections.

There was a decree and findings for plaintiff and defendant appeals.                    AFFIRMED.

For appellant there was a brief submitted over the name of *Mr. Herbert P. Welch.*

For respondent there was a brief prepared and submitted over the name of *Messrs. McCamant, Bronaugh & Thompson.*

McBRIDE, C. J.—Defendant states his first contention as follows:

"That where a large body of land intervenes between the meander line and the water's edge, the grantee takes to the meander line only and not to the water's edge."

Conceding this to be the law, there is no evidence that a large body of land intervened between the meander line and the water's edge when the government survey was made in 1872. The preponderance of the evidence, in fact all the competent evidence on this subject, indicates that the meander line was run as near to the waters of the lake as practicable or possi-

ble, and that the quantity of land lying in front of the line was negligible, possibly an acre or so.

1. The fact that insignificant spots of land are left between the meander line and the water, will not impeach the survey or confine an adjacent upland owner within the limits indicated by the meander line, but the waters of the lake itself will constitute his true boundary.

This is the rule laid down in *Cawlfield* v. *Smyth*, 69 Or. 41 (138 Pac. 227), which cites all previous holdings by this court on that subject. We conclude, therefore, that the true boundary of the lots in question was the lake itself and not the meander line.

2. The next contention of defendant is stated as follows:

"That in order to enable respondent to acquire title to the land between the meander line and the water's edge, the recession of the water must have been gradual and imperceptible and must have been caused largely by natural means."

This contention, with exceptions hereafter noted, practically states the law. The rule is derived from the Roman law and is stated in the Institutes as follows:

"Moreover that ground which a river hath added to your estate by alluvion becomes your own by the law of nations. And that is said to be alluvion which is added so gradually that no one can judge how much is added at each moment of time": Cooper's Justinian, Lib. II, Tit. I, Section XX.

3. Technically speaking, land uncovered by a gradual subsidence of the water is not an accretion but a reliction, but the terms are often used interchangeably and the law relating to accretions applies in all its features to relictions: Gould on Waters (3 ed.), § 155.

4, 5. The reliction is said to be imperceptible when it is not discernable in its progress, though the fact that there has been an increase may be perceptible year by year or at shorter intervals: Gould on Waters, § 155.

The contention that the reliction must result purely or largely from natural causes, must be received subject to many restrictions. One who purchases land abutting upon a lake or watercourse, usually considers his right of access to such waters as an element of value in the purchase. When we speak of riparian rights, we are not considering a mere shadowy privilege but a substantial property right, the right of access to and a usufruct in the water. To say that the owner of such a right may without his consent be deprived of it by the state or the general government permitting some other person to obtain title to the accretion formed by an impounding or diversion of part of the waters that previously washed the shore of his land, does not appeal to our sense of justice and we do not believe that the authorities generally support such a doctrine. Mr. Gould, speaking of the rule of accretion, says:

"In general it applies to artificial ponds as well as to natural waters, and to changes made by artificial as well as natural causes, if the artificial cause is not itself unlawful and the gradual acquisition of the new soil, results from the exercise of lawful rights of property and not from operations tending or intended to produce the change": Gould on Waters, § 155; *Adams* v. *Frothingham*, 3 Mass. 352, 362 (3 Am. Dec. 151); *County of St. Clair* v. *Lovingston*, 23 Wall. 46–66 (23 L. Ed. 59).

6. But even were it conceded that a reliction caused by artificial diversion of streams emptying into a lake and thereby diminishing its water supply, would not

accrue to the riparian owners of the adjacent bank, the evidence is not sufficient here to establish the fact that the recession of the waters of Goose Lake is due to that cause.

One witness who was born in the vicinity and had known the premises from 1889, which was evidently long before any artificial interference with the flow of water into the lake, testified that in that year its waters were as low as they were when this suit was tried; that their height fluctuated more or less with the quantity of snow that fell in the mountains. Another witness testified that there had been a gradual decrease in the height of the water for many years, the rise and fall fluctuating with the snowfall. Another witness testified to a gradual recession of the water for a great many years. On cross-examination he stated that the recession had been greater since the Drews Valley reservoir had been put in, but stated that there had been no winters since that event that would bring much water into the lake. The capacity of the reservoir and the quantity of water diverted, are nowhere shown and we are fairly justified in concluding that the quantity absolutely lost to the volume of the lake, is inconsiderable.

When we take into consideration the size of the lake, twelve miles in width and thirty-five miles in length, this must necessarily be the case. The third and last contention of defendant is practically a repetition of the first contention and need not be further considered.

From all the testimony, we conclude that the original meander line in front of sections 17 and 20, was honestly and correctly run; that these fractional sections abutted upon the actual waters of Goose Lake; that the accretions to plaintiff's land have been from

natural causes and have been gradual and imperceptible and are therefore a part of his estate.

It therefore follows that the decree of the Circuit Court should be affirmed and it is so ordered.

AFFIRMED.