Argued December 4, 1940; modified January 21; rehearing denied
February 18, 1941

# DARLING ET AL. *v.* CHRISTENSEN ET AL.
### (109 P. (2d) 585)

Department 1.

*H. E. Slattery*, of Eugene (Slattery & Slattery and Whitten Swafford, all of Eugene, on the brief), for appellants.

*T. G. B. Swanton, Jr.*, and *Bennett Swanton*, both of Marshfield, for respondents.

KELLY, C. J. This is a suit to quiet title to two tracts of land. Plaintiffs are husband and wife. They

claim title in fee in plaintiff, Jesse Darling, subject only to an inchoate right of dower in his wife, Addie Darling, who is coplaintiff with him.

The appearing defendants attack the claim of ownership made by plaintiffs and also urge that, inasmuch as one of the tracts in suit is meander land on the shore of Siltcoos lake, a navigable body of water, and is adjacent to land heretofore platted into lots and streets under the name of Tsiltcoos Lake Club Plat; and, inasmuch as defendants are owners of some of said lots, defendants are entitled to access to the water of said Siltcoos lake. It is the position of said defendants that the land between ordinary high-water mark and low-water mark on that portion of the shore of Siltcoos lake, involved herein, is subject to an easement by virtue of which the upland owners may travel thereon without interruption, hindrance or obstruction.

It appears that buildings have been constructed by plaintiffs upon said meander land and it is claimed by defendants that those buildings interfere with the exercise by defendants of their right of access to the water of said lake. The trial court held in effect that inasmuch as the record discloses that several defendants had knowledge that the buildings were being constructed and one of the defendants assisted in constructing such buildings and thereby plaintiffs were led to believe that no objection thereto would be urged by defendants, under the law of estoppel, defendants ought not to be permitted to urge now that said buildings should be removed.

The trial court dismissed plaintiffs' complaint, decreed defendants to be the owners of an easement upon and over said meander land enabling them to

have access to the waters of said lake, and, as stated, denied defendants' prayer that plaintiffs be required to remove the buildings erected as aforesaid upon said meander land. Plaintiffs appeal from the part of the decree dismissing their complaint and declaring defendants to be entitled to access to the waters of said lake. Defendants appeal from the part of said decree denying their prayer for an order requiring plaintiffs to remove said alleged obstructions.

For convenience we will designate the following described tract involved herein as tract number one, to-wit:

Beginning at a point 33 feet east of the northeast corner of lot No. 61 of Tsiltcoos Lake Club Plat, as recorded plat book 3, page 13, Lane County record of plats, and running thence east along the south line of county road to a point where such line intersects the U. S. survey of the meander line of Siltcoos lake, thence southwesterly and following said meander line to a point where it intersects the north line of lot No. 5 of section 27, twp. 19 S. R. 12 west of W. M.; thence westerly along said north line of said lot No. 5 to a point 33 feet east of the east, north and south boundary line of said lot 61 of Tsiltcoos Lake Club Plat; thence north to the place of beginning; except therefrom the following described tract, to-wit: Beginning at a point 33 feet south of the southwest corner of lot 52, Tsiltcoos Club Plat in section 27, township 19 S. R. 12 west of W. M. in Lane county, Oregon; thence south 7 feet; thence easterly 7 feet south of the south line of the platted roadway to the point where such line intersects the U. S. meander line; and thence to the south line of said roadway to the place of beginning to make a strip 7 feet wide on the south side of said

roadway and make said roadway 7 feet wider than platted and laid out.

The other of the two tracts in suit will be designated as tract number two. It is described as follows:

Beginning at a point on the U. S. meander line north 84 degrees 33 minutes west 8.83 chains from meander post on right bank of Siltcoos lake, corner to fractional sections 26 and 27 T. 19 S. R. 12 W. W. M., and running N. 84 degrees 33 minutes W. 6.06 chains to iron rod set in U. S. government survey with brass top stamped S. 27 T. 19 S. R. 12 W. Ap. 4, 1916; thence S. 75 degrees 27 minutes W. 5.12 chains to similar iron rod stamped Ap. 3; thence S. 31 degrees 27 minutes W. 5.12 chains to similar iron rod stamped Ap. 2; thence S. 61 degrees 00 minutes E. 1.20 chains to low-water mark on the shore Siltcoos lake; [thence] N. 29 degrees 42 minutes E. 3.741 chains along lake shore at low-water wark; [thence] N. 76 degrees 35 minutes E. 4.865 chains; [thence] S. 89 degrees 18 minutes E. 6.075 chains; [thence] north 1.36 chains to place of beginning, containing 2.357 acres of land fronting and abutting on lots 4 and 5.S. W. ¼ of N. E. ¼ of section 27 T. 19 S. R. 12 W. W. M.

Plaintiffs' basis for claiming title, as stated, to tract number one comprises three deeds executed by the sheriff of Lane county, wherein plaintiff, Jesse Darling, is named grantee. The first of these deeds is recorded in Book 142, at page 84 of Deed Records of Lane county, and was executed on the 9th day of August, 1924, by the sheriff of Lane county, pursuant to a sale on said date, based upon a real estate tax judgment and decree of the circuit court of the state of Oregon for the county of Lane, made and entered on the 17th day of July, 1924.

In this deed of August 9, 1924, the premises sold are described as:

"That part of lots five and six lying east of Tsiltcoos Lake Club Plat in section 27 township 19 south range 12 west of the Willamette Meridian in the county of Lane and state of Oregon."

Tract number one does not constitute any part of said lots 5 or 6 and hence the foregoing description does not include tract number one or any part thereof.

In chronological order the second of the three deeds upon which plaintiff bases his claim to tract number one is recorded in Book 168 at page 588 of said Deed Records and was executed by the sheriff of Lane county on April 24, 1931, which it will be noted was six years, eight months and fifteen days after the execution of the deed first above mentioned.

The following description and explanation is set forth in the deed of April 24, 1931, to-wit:

"All that part of lots Four (4) of Section Twenty-seven (27) Township 19 South Range 12 west unplatted and lying North of lots 5 and 6 of said Section, in Lane County, Oregon.

"This small strip, if any, was intended to have been covered and transferred by a former deed to the unplatted portions of said lots five and six heretofore deeded to said Jesse Darling by Lane County, by deed number 61321, recorded in book 142 page 84."

The third deed contains a description of tract number one conformable to that given in plaintiffs' complaint, except that in the third deed the parcel expressly excepted in the complaint is not mentioned. This third deed was executed on October 27, 1932.

The following notation also appears in said deed:

"This premises was paid for and intended to have been included in the deed from Lane County, Oregon,

to Jesse Darling, recorded Book 168, page 588 deed records of Lane County, and this deed makes correction.''

The description of the property conveyed in the deed of August 9, 1924, conforms to the description in the complaint in the case brought by Lane county, Oregon, against Pauline Albright and others, being case numbered 14661 of the circuit court in and for Lane county, Oregon, and being the cause instituted for the foreclosure of the delinquent taxes and certificate of delinquency issued to Lane county for the delinquent taxes for the year 1919. The same description was contained in the summons published in the case and in the judgment, decree and order of sale, 1924, by virtue of which the deed of August 9, 1924, was executed by the sheriff of Lane county.

■ This is not a case wherein a mistake was made in the execution of a tax deed whereby the true state of the record supporting such deed was not set forth therein. We do not hold that such a mistake could not be corrected by a second deed. In the instant case the property described in the court record, as stated, is the property described in the sheriff's first deed. The authority of an officer executing such a deed to correct a mistake by a second deed cannot be used to misstate the prior proceedings and change the description of the property from that set forth in the complaint of foreclosure, the published summons and in the judgment, decree and order of sale so that the description of the property attempted to be conveyed is that of an entirely different parcel of land from the one upon which the foreclosure record is based. 61 C. J., Subject, Taxation, § 1870, p. 1333, notes 94 and 95, citing *Gould v. Thompson*, 45 Iowa 450; *Hewitt & Rounds v. Storch*,

31 Kan. 488, 2 P. 556; *Keller v.. Hawk,* 19 Okla. 407, 91 P. 778; *Chatfield v.. Iowa & Etc. Land Co.,* 88 Ark. 395, 114 S. W. 473; *Miller v. Noble,* 59 Okla. 29, 157 P. 740.

In October 1932, the sheriff was without any authority to change the record made in the foreclosure proceedings which was properly followed by the original deed of August 9, 1924.

■ For these reasons the tax deed and the two deeds attempting to correct it failed to convey to the plaintiff, Jesse Darling, title to tract number one herein.

■ It also appears that in the proceedings, wherein the delinquent tax certificates held by the county were foreclosed, costs and disbursements were taxed, allowed and included in the judgment lien although no cost bill was filed in support thereof. This vitiated the sale and invalidated the deed made thereunder: *Barber v. Newbegin,* 154 Or. 55, 58 P. (2d) 1254; *Wing v. Parrott,* 154 Or. 405, 60 P. (2d) 603. "The addition of an unauthorized sum to the amount of taxes due renders the sale void." *Barber v. Newbegin,* supra. See also *Smith v. Carlson,* 160 Or. 383, 388, 85 P. (2d) 1028, 1030, and cases there cited.

■ Plaintiffs allege, in effect, that plaintiff, Jesse Darling, is the owner and holder of the title to tract number one and ask to have such title quieted. In support of this allegation they present a tax deed which does not convey tract number one or any part thereof. It is now urged that defendants should not be permitted to say that the two deeds purporting to correct the description to conform to that of tract number one are ineffective and unauthorized because the statute of limitations in effect prior to 1937 provided that—

"Every action, suit or proceeding which may be commenced for the purpose of determining the validity

of a sale of land for taxes, or to quiet the title against such sale or to remove the cloud thereof, or to recover the possession of land so sold, or for which certificates of delinquency have been issued, shall be commenced within three years from the date of the sale for taxes by the sheriff" etc. Section 69-845, Oregon Code 1930.

In 1937, the statutory provision was amended fixing the period of limitation at two years. Oregon Laws 1937, chap. 470, p. 815. In 1939, the period of two years was again prescribed: Oregon Laws, 1939, ch. 485, sec. 20, p. 947.

We think that plaintiffs had the burden of establishing their allegation of ownership, and that they failed to sustain that burden by introducing the three deeds mentioned.

Moreover, "The defense of the statute of limitations is waived by failure to plead the same: Or. L., § 72; Davis v. Davis, 20 Or. 78 (25 Pac. 140); Hawkins v. Donnerberg, 40 Or. 97 (66 Pac. 691); Ausplund v. Aetna Indemnity Co., 47 Or. 10 (81 Pac. 577, 82 Pac. 12); Creason v. Douglas County, 86 Or. 159 (167 Pac. 796)." *Branch v. Lambert*, 103 Or. 423, 439, 205 P. 995, 1001.

No error was committed by the learned trial judge in holding that plaintiffs have not shown Jesse Darling to be the owner of tract number one.

As stated, plaintiffs support their title to tract number two by a deed executed on November 2, 1929, by the State Land Board purporting to convey to plaintiff, Jesse Darling, said tract number two; and defendants attack said deed as having been procured by misrepresentation, in disregard of the statutory right of preference given to riparian owners, and in violation of the the spirit and meaning of the statutory provision for publishing notice of the proposed purchase of such lands.

These statutory provisions are as follows:

"All tide and overflow lands shall be sold or leased only to the highest bidder after being duly advertised for a period of thirty days in two or more newspapers of general circulation in the state, one of which must be published in the county in which the lands lie; provided, however, that no such lands shall be sold for less than $5. per acre, and that the owner or owners of any lands abutting or fronting on such tide and overflow lands shall have the preference right to lease or purchase at the highest price offered, provided the offer is made in good faith; * * *." Section 60-312, Oregon Code 1930.

The misrepresentation alleged arises from the statement by plaintiff, Jesse Darling, that he was the owner of tract number one. It is sufficient to say that this record is such that no intention on plaintiff's part to deceive the State Land Board in that regard should attach to plaintiff's claim of ownership thereto. At most, plaintiff was mistaken, but nothing in the record discloses that his mistake was not an honest one.

We are unwilling to hold that compliance with the terms of the statute, as to publication of notice of intention to purchase tidelands, constitutes a violation of the spirit of such statute. It is true that one witness testified to an alleged statement, upon Darling's part, which would indicate a fraudulent design on his part, but Mr. Darling denies that he made any such statement. He had, not only the tax deed mentioned, but also a deed from William Polders to property in lot 5 of said township, which dissipates any fraudulent intention on his part in claiming to be a riparian owner.

The statute requires the publication of such notice in a newspaper published in the county where such land is situated and also in a newspaper published in a

county wherein such land is not situated. Plaintiff caused such a notice to be published in a newspaper published at Junction City in Lane county and also in a newspaper published at Harrisburg in Linn county.

The court's attention is called to the fact that in Lane county a newspaper was being published at a point much nearer to the land in suit than is the municipality of Junction City. It also appears that defendants were not subscribers or even readers of that paper. It is true that after the sale was made, defendants, or some of them, repaired to the office of the more proximate paper and ran through its files to see whether plaintiff, Jesse Darling, had availed himself of the advertising space thereof. It is clear that even though the paper published nearest the land in suit had carried the notice of Mr. Darling's intention to purchase, defendants would not have seen it.

The record discloses a letter from the State Land Board to one of the owners of property in close proximity to the land, in suit, advising such owner of plaintiff's application to buy it. This letter was not delivered to the addressee, but was returned to the State Land Board.

■ We think that the deed from the State Land Board should not be invalidated. That board is not a party hereto.

At most, if a case had been made wherein some one other than plaintiff, Jesse Darling, was shown to be entitled to a deed from the State Land Board to said property, then a decree might be entered declaring said plaintiff to be the trustee of the person entitled to the deed and requiring a transfer of the real property to such person, or in default thereof that such decree should be considered as such transfer. No attempt is made here to present such a case.

The deed from the State Land Board to plaintiff is a valid, effective muniment of title.

■ In dealing with this subject Prof. Farnham makes a very lucid statement of the law, thus:

"But at the time the governments were established in the American states the doctrine had become settled that the shore was a separate class of property which might and commonly did belong to the owner of the adjoining upland, but which belonged to the Crown unless he could be shown to have parted with it. Therefore the new states took title to all the shore which had not been granted by the Crown, or the Crown grants of which they did not choose to recognize. This land they could dispose of as they could the other land which came to them by the transfer of the title from the Crown, and they could make whatever regulations they chose with respect to it. They might ordain, as did Massachusetts, that the grant of the upland would pass title to low water mark; or they might expressly provide, as did Washington, that the title to the tide lands should remain in the public until expressly disposed of. Most of the states, however, made no express provisions upon the subject, and the question how far the title of the riparian owner extended was left to the courts for determination. The great majority of the courts acted upon the principle that, since the shore was a separate class of property and the grant from the state passed only what was expressly mentioned, therefore the shore did not pass with the grant of the upland." Vol. I, Farnham, Waters and Water Rights, (1904 Ed.) Part of section 43, pp. 208-9.

Among the cases cited to support the doctrine of the last sentence above quoted are *Hinman v. Warren,* 6 Or. 408, 411; *Parker v. Taylor,* 7 Or. 435, 446; *Parker v. Rogers,* 8 Or. 183; *Hobson v. Monteith,* 15 Or. 251, 14 P. 740; *Parker v. West Coast Packing Co.,* 17 Or. 510, 21 P. 822, 5 L. R. A. 61,

In a recent case dealing with a nonnavigable lake, Mr. Justice BELT makes the following statement:

"Turning for the solution of our problem to the laws of this state, we find it well established that, when the Federal government grants land bordering on a navigable stream, the grantee takes to the ordinary high-water mark and that title to the bed of the stream is vested in the state: United States v. Utah, 283 U. S. 64 (75 L. Ed. 844, 51 S. Ct. 438); Micelli v. Andrus, 61 Or. 78 (120 P. 737,) and numerous cases from this jurisdiction cited therein." *Luscher v. Reynolds, et al.,* 153 Or. 625, 631, 56 P. (2d) 1158.

In the case at bar, the body of water involved, namely, Siltcoos lake, is a navigable water way. Appealing defendants recognize and assert that when Oregon was admitted into the union, said lake was, and ever since has been, navigable and public waters and that the ownership of the bed of said lake up to high-water mark thereof, upon the admission of Oregon into the Union inured to the state of Oregon, and said bed up to ordinary high-water mark at all times since has remained and still is in the state of Oregon.

■ The title being in the state of Oregon, unquestionably the state has the right to sell such property. We think that because a newspaper is published in close proximity to such property, it does not necessarily follow that such newspaper is a better medium for giving notice of the proposed purchase of such land than some other newspaper. We think the deed from the State Land Board to plaintiff, Jesse Darling, constitutes a valid and effective transfer of the title theretofore vested in the state to tract number two herein. For that reason, we are of the opinion that plaintiffs' complaint ought not to have been dismissed.

This brings us to a consideration of the character of title so transferred. The land involved is known as

meander land, that is land comprising the shore of Siltcoos lake and lying between high and low water marks.

Prior to and on January 25, 1908, William Polders, as trustee, was the owner of the land abutting upon the northerly and westerly sides of the tract in suit. On January 25, 1908, Mr. Polders and his wife filed a plat designated as Tsiltcoos Lake Club Plat comprising a park in the northwest corner of said plat containing 17.8125 acres and 75 lots numbered consecutively from 1 to 75, both inclusive, with streets running northerly and southerly between alternate rows of lots on the northerly side of Siltcoos lake; and with streets running easterly and westerly between alternate rows of lots on the westerly side of said lake. These streets extended to the northerly boundary line of the land in controversy herein, which is designated tract number two.

██ ██ Mr. Polders, trustee, as the littoral owner, had the right of access to the water of this navigable body of water. The dedication of the property as Tsiltcoos Lake Club Plat did not destroy the right, but perpetuated it in the lot owners whose lots abut upon the shore of the lake as to that portion of the shore which is in front of their property: *Rasmussen v. Walker Warehouse Co.*, 68 Or. 316, 136 P. 661.

With reference to the termini of the streets which abut upon the shore of the lake, if we give effect to an express reservation endorsed upon the plat of Tsiltcoos Lake Club Plat, the littoral rights to the shore contacted by such termini rests in the lot owners.

We quote the endorsement on the plat to which we refer:

"Know all men by these presents: That W. Polders, Trustee, and Kate S. Polders, his wife, do hereby

dedicate to the use of the owners of the lots in the Tsiltcoos Lake Club Plat, being lots numbers one (1) to seventy-five (75) inclusive, in the said plat, and to their assigns, all streets and driveways and park laid out and indicated on said plat, for the purposes of streets, driveways and park; and this dedication is made in behalf of the owners of said streets, driveways and park and is a dedication only, and is restricted to the use and benefit of the owners of said lots and their assigns and is not a dedication to the public or for public use." * * *

■ We think, however, that the attempted reservation in the foregoing dedication of the park and the streets to the use of the lot owners and not the public, is so inconsistent with the purposes of a dedication of platted property for the purpose of sale as town lots upon the shores of a navigable lake, that it is ineffective and void: 18 C. J., Subject: Dedication, §§ 64 and 65, p. 71, and authorities cited in notes thereto.

Taking this view, we hold that such littoral rights to access to the lake by going upon and over the shore in front of the termini of said streets is in the public.

The distinction between the case at bar and the case of *Security & Investment Co. v. Oregon City*, 161 Or. 421, 90 P. (2d) 467, lies in the fact that in our opinion it was the intention of the parties in interest in the instant case to connect said termini with the meander property of said lake. The dotted line upon the plat indicating the high-water mark of the lake is contacted by such termini with no other property intervening. A contrary intention was manifested in the case of *Security & Investment Co. v. Oregon City*, supra.

Professor Farnham, in discussing the right of access to navigable waters, says:

"It thus appearing from the preceding sections that at common law the riparian owner has a right of access

to the stream which cannot be destroyed even for the improvement of navigation without making compensation to the owner, the right should be much more fully protected in this country, where the constitutions prevent the taking of private property for public use without making compensation. And the general rule is that the rights are so protected. A few of the courts, however, have refused to recognize a right of property in the riparian owner, or have held that it was subordinate to the public right, so that they have permitted the right to be cut off without any redress or compensation. * * * As said by Judge McLean in Bowman v. Wathen, the riparian right extends to the water. The riparian owner holds this right by as sacred a tenure as he holds the land from which it emanates. The state cannot, directly or indirectly, devest him of it except by a constitutional exercise of the power to appropriate private property for the public use. Or, as said by Judge Wheeler in VanDolsen v. New York,'' (21 Blatchf. 454, 17 Fed. 817) ''the Crown or a municipal corporation cannot grant land bounded by a way, and afterwards remove the way, any more than an individual can. This principal prohibits any interference with the individual's right of access. Wharves or piers cannot be erected in such a way as to interfere with it, nor buildings, nor permanent floating structures, nor a tramway. Nor can vessels be moored in such a way as to cut off the access of the riparian owner. The access cannot be cut off by trestles, deposits or mud or debris, or any other unnatural means. And in case the access is interfered with the wharf owner sustains such injury peculiar to himself that he may maintain an action for the injury. The access cannot be destroyed by changing the level of the water. Nor by changing the channel of the stream. Nor by changing the current of the stream so as to cause the filling up of the bed in front of the property of the abutting owner, where the Constitution provides that no property shall be taken or applied to public use without compensation. A street cannot be constructed

along the shore in such a way as to cut off access to the stream. If a portion of the bed becomes dry the riparian owner has a right to use it in reaching the stream. But it has been held that he has no right to excavate so as to bring deep water nearer his upland, where the title to the bed does not belong to him. The right of access does not include the right to have the tide flow to the property if it is of no value for the purposes of navigation. And such right is not infringed by being temporarily interfered with in construction of public works. The right is confined to access to the front of the property, and does not include a right of access to the sides of piers which may be projected into the stream." Vol. I, Farnham, Water and Water Rights, (1904 Ed.) § 66, pp. 297 et seq.

This court is not among the few who have refused to recognize a right of property in the riparian owner or have held that it was subordinate to the public right. On the contrary, this court has expressly recognized and protected such right: *Rasmussen v. Walker Warehouse Co.*, supra; *Kronenberg v. Walker Warehouse Co.*, 68 Or. 331, 136 P. 666.

We quote an expression made by the late Mr. Chief Justice McBRIDE:

"One who purchases land abutting upon a lake or watercourse, usually considers his right of access to such waters as an element of value in the purchase. When we speak of riparian rights, we are not considering a mere shadowy privilege, but a substantial property right, the right of access to and a usufruct in the water." Hanson v. Thornton, 91 Or. 585, 591, 179 P. 494, 496.

This expression is quoted approvingly by Mr. Justice RAND in *State v. Imlah*, 135 Or. 66, 74, 294 P. 1046, 1048.

■ We have used the term, littoral, in recognition of the distinction between one whose land abuts upon a

river and one whose land abuts upon a lake. The former is riparian owner, while the latter is a littoral owner: *Peck v. Alfred Olso Const. Co.*, 216 Iowa 519, 245 N. W. 131, 89 A. L. R. 1132; Vol. 37, Words & Phrases (Perm. Ed.) 707, Article, "Littoral Owner."

15, 16. This results in a modification of the decree of the circuit court to the effect that plaintiffs' claim to the title to tract number two is upheld in that plaintiff, Jesse Darling, became the owner in fee of said tract number two by grant evidenced by said deed executed by the State Land Board, as above stated; and plaintiff, Addie Darling, thereby became the owner of an inchoate right of dower in and to said tract number two. To the extent that the appealing defendants herein should not be permitted to urge that plaintiffs be required to remove the buildings erected upon tract number two, the record supports the holding of the trial court applying the doctrine of estoppel and refusing to require plaintiffs to remove said buildings. With this exception said title of plaintiffs is subject to the right of the littoral or riparian owners as above indicated which littoral right includes access to Siltcoos lake over the respective easements appurtenant to the property abutting upon the property in suit and plaintiffs have no right or authority to interfere with, interrupt or prevent the exercise of said right of access to said lake.

As thus modified, the decree of the circuit court is affirmed. It is ordered that plaintiffs recover judgment for their costs and disbursements on this appeal.

RAND, ROSSMAN and BELT, JJ., concur.