Argued June 4, affirmed June 23, rehearing denied June 30, 1914.

## WESSINGER v. MISCHE.

(142 Pac. 612.)

**Dedication—Acts Constituting—Adverse Use.**

1. Where a city permits uninterrupted use of premises as a park by the public for more than 40 years, such occupation amounts to an irrevocable dedication to the community for that purpose.

[As to what amounts to a dedication to a public use, see note in 27 Am. Dec. 559. As to presumption of dedication from user as a highway, see note in Ann. Cas. 1914D, 335.]

**Municipal Corporations—Parks—Rights of Property Owners—Estoppel.**

2. That plaintiffs purchased lots opposite a park for the purpose of establishing residences thereon, each paying for his part of the real property more than he would otherwise have given, does not create an estoppel *in pais* against the city, so as to create any private right in or to the park.

[As to estoppel by acquiescence of silence, see notes in 57 Am. Rep. 429; 10 Am. St. Rep. 22.]

**Municipal Corporations—Parks—Estoppel—Rights of Property Owners.**

3. The widening of streets adjacent to a park, effected by donations of their property by plaintiffs but without any agreement with the city, does not secure to plaintiffs any private interest in the park, and no equitable estoppel arises therefrom.

**Municipal Corporations—Parks—Purpresture.**

4. The construction by a city in a park of a garage in which to keep automobiles and motor trucks to be used by members of the park board and their employees in caring for the public parks of the city would be a purpresture, unless the city was authorized to erect the garage.

[As to what are purprestures and remedies for their abatement, see note in 69 Am. St. Rep. 271.]

**Nuisance—Public Nuisance—Elements.**

5. The attempt to make several a part or all of that which ought to be common to many may constitute a nuisance, depending on the facts of each particular case.

**Nuisance—Public Nuisance—Injunction—Relief—Purpresture.**

6. A court of equity may enjoin a purpresture, not only when it becomes a public nuisance, but also where a private party has sustained or will sustain a special injury by the threatened creation or maintenance of the purpresture.

**Municipal Corporations—Parks—Rights of Property Owners.**

7. An averment, in a complaint, that the plaintiffs' real property is separated by a street from a public park states such a special interest as to authorize them to maintain a suit to determine whether the threatened erection by the city of a garage on the park would constitute a purpresture.

**Municipal Corporations—Building on Public Park—Subject of Relief.**

8. The erection on a public park by a city of a garage for automobiles and motor trucks to be used by members of the park board and their employees in caring for the public parks of the city will be restrained in equity at suit of the owners of residence lots across the street from the park.

## ON PETITION FOR REHEARING.

**Municipal Corporations—Parks—Charter Provisions.**

9. Portland City Charter (Sp. Laws 1903, p. 3), declaring that the city may lease, sell, or dispose of parks for the benefit of the city, does not authorize the erection of a garage on the park for auto-

mobiles and motor trucks for park officers and employees; the rule *"ejusdem generis"* being applicable in construing the general word "dispose," following the words of specific meaning.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 1.    Statement by MR. JUSTICE MOORE.

This is a suit by Paul Wessinger and others, claiming to be the owners of land fronting on a street which separates their real property from a public park, to enjoin the City of Portland, and E. T. Mische and others, as members of the city park board from an alleged diversion of a part of such pleasure grounds from the use to which it is averred in the complaint and admitted in the answer to have been dedicated. From a decree granting the relief prayed for in the complaint, the defendants appeal.

AFFIRMED.    REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Fred L. Everson* and *Mr. Frank S. Grant,* with an oral argument by *Mr. Everson.*

For respondents there was a brief and an oral argument by *Mr. E. E. Heckbert.*

MR. JUSTICE MOORE delivered the opinion of the court.

It appears from the evidence that, pursuant to a municipal ordinance, the City of Portland, on February 20, 1871, secured by purchase a tract of land to be used as a public park, the west line of which borders in part upon the east line of Edison Street.    The plaintiffs about March, 1909, purchased all the lots on the east side of block 1, and also the southeast lot in block 2 immediately north thereof, in Parkside in that city, which real property consists of resident lots that bor-

der on the west side of Edison Street at the place indicated. At the time the latter purchases were made, a street extending west from Edison Street between the blocks indicated was only 20 feet wide, but the plaintiffs, whose land bordered on the cross street, donated a strip 14 feet wide on each side of that highway, thereby making it 48 feet wide. Edison Street at that time was only 30 feet in width in front of the lots so owned by the plaintiffs, but they also dedicated to the city a strip 10 feet wide off the east end of their lots, thus widening the highway at that place to 40 feet. Pursuant to ordinances, both streets referred to have been graded and paved by the city in front of plaintiffs' lots by an assessment imposed thereon. Immediately east of these lots the city has erected buildings and put up fences in the park, in which structures and inclosures rare birds and wild animals are kept.

The defendant E. J. Mische, as superintendent of the parks of the city, on April 18, 1912, in order to prepare a foundation for a building, commenced an excavation on the west side of the park, in what would have been the cross street had it been extended, intending to erect thereat a garage in which to keep automobiles and motor trucks to be used by members of the park board and their employees in caring for the public parks of the city, whereupon this suit was instituted, resulting in a decree as hereinbefore indicated.

1. The admission in the answer that the tract of land so purchased by the city had been dedicated by it to the public as a park makes a careful examination of the evidence on this branch of the case unnecessary. It appears, however, that such formal acknowledgment was evidently warranted by the facts, for, the city having permitted an uninterrupted use of the premises by the public for more than 40 years, such occupation of

the land as a park amounts to an irrevocable dedication thereof to the community for that purpose: *State v. Woodward,* 23 Vt. 92, 99.

2. The complaint herein alleges in effect that the plaintiffs purchased the lots referred to for the purpose of establishing several residences thereon, each paying for his part of the real property a greater price than he would otherwise have given, except for the fact that the tract of land had been dedicated to the public. Such averment does not present an element of estoppel *in pais* against the city so as to create any private right in or to the park: *Clarke v. Providence,* 16 R. I. 337 (15 Atl. 763, 1 L. R. A. 725).

3. It is not alleged in the complaint, nor does it appear from the evidence, that the widening of the streets, which was affected by the plaintiffs' donation of parts of their property, was made pursuant to any agreement with the city, whereby they secured any private interest in the public grounds, and no equitable estoppel can arise thereby.

4. Unless the city was authorized to erect a garage in the park, the construction of such a building therein would be a purpresture: *Church v. City of Portland,* 18 Or. 73, 84 (22 Pac. 528, 6 L. R. A. 259).

5. The attempt to make several a part or all of that which ought to be common to many may also constitute a nuisance, depending upon the facts of each particular case: *People v. Park & Ocean R. R. Co.,* 76 Cal. 156 (18 Pac. 141).

6. The right of a court of equity to enjoin a purpresture when it becomes a public nuisance is well settled: *Attorney General v. Cohoes Co.,* 6 Paige (N. Y.), 133 (29 Am. Dec. 755); *Church v. City of Portland,* 18 Or. 73 (22 Pac. 528, 6 L. R. A. 259), and notes. It is not necessary, however, that a purpresture should also be

a public nuisance before a court of equity is authorized to intervene and grant injunctive relief on behalf of a state or the people thereof at the suit of the proper officer; but, where a private party has or will sustain a special injury by the threatened creation or maintenance of a mere purpresture, he is entitled to invoke such remedy: *Steamboat Co.* v. *Wilmington etc. R. R. Co.,* 46 S. C. 327 (24 S. E. 337, 57 Am. St. Rep. 688, 33 L. R. A. 541); *Revell* v. *People,* 177 Ill. 468 (52 N. E. 1052, 69 Am. St. Rep. 257, 278, and notes, 43 L. R. A. 790).

7. The complaint in the case at bar having alleged that the plaintiffs' real property is separated by a street from a public park, the averment states such a special interest in the land held by the city in trust that they are authorized to maintain a suit to determine whether or not the threatened erection of a garage on the premises would constitute a purpresture: *Brown* v. *Manning,* 6 Ohio, 298 (27 Am. Dec. 255).

8. The fact that cages have been put up and inclosures made in the park for amusement purposes leads to the conclusion that the premises have been appropriated by the city to a public use as pleasure grounds. Such being the case, the construction of any building, the use of which by the public conduces to their enjoyment, is permissible: 21 Am. & Eng. Ency. of Law (2 ed.), 1072. Thus the erection of a building for a public library in a public park, with rooms therein as a meeting place for the board of library directors of the city, is a legitimate use of a portion of the park, which cannot be enjoined at the suit of an abutting owner or taxpayer; but the use of the library for administration purposes, such as for rooms for the board of education or for any other municipal body, may be enjoined:

*Spires* v. *City of Los Angeles,* 150 Cal. 64 (87 Pac. 1026, 11 Ann. Cas. 465).

In *State ex rel.* v. *Brown,* 111 Minn. 80 (126 N. W. 408), it was ruled that the board of park commissioners of the City of Minneapolis had the power to erect a dwelling-house upon park property, to be used by the park superintendent and his family as a residence, and also as an office by the superintendent and his associates. In that case the authority so to appropriate a part of the park was deduced from a liberal construction of a clause of the charter of that city and the exercise of implied power derived therefrom, which enactment empowers the board of park commissioners to maintain parks and "to hold, improve, govern, and administer the same for such purposes." In reaching that conclusion, Mr. Justice JAGGARD, speaking for the majority of the court, observes:

"It is clearly within the implied powers of the park board to erect on its property pavilions, boathouses, workshops, stables, greenhouses, storehouses, and administrative building and the like. It is within the discretion of the board whether it should combine with the administrative building a superintendent's residence."

In a dissenting opinion, Mr. Justice BROWN, however, presents what we deem to be the better reason wherein he denies that such power may exist by implication.

There may be lawfully erected in a public park, devoted to recreation and amusement, buildings, such as power-houses and the like, from which the public, as a matter of precaution for their safety, must necessarily be excluded, but these structures are only designed as a means to an end, whereby rest is induced and happiness promoted by enjoyment of the remainder of the

premises. It is not to be supposed that a visitor to a public park would be permitted to enter a cage of ferocious animals or a den of poisonous snakes, yet the exhibition of beasts and reptiles furnishes lessons in the study of the nature of animals, and for that reason places of confinement to prevent their escape and to preclude their contact with the public may be built in a park.

Because the private use of a building in a public park may prove advantageous to persons engaged in caring for the premises affords no reasonable excuse for the maintenance or erection thereon of such structures, since the public would be excluded therefrom without any necessity therefor.

Believing that the erection of the garage would be a purpresture, the maintenance of which the plaintiffs are entitled to have enjoined, it follows that the decree should be affirmed; and it is so ordered.

AFFIRMED. REHEARING DENIED.

Denied June 30, 1914.

ON PETITION FOR REHEARING.

*Mr. Walter P. La Roche* and *Mr. Henry A. Davie,* for the petition.

*Mr. E. E. Heckbert, contra.*

MR. JUSTICE MOORE delivered the opinion of the court.

9. In a petition for a rehearing it is insisted that, the City of Portland having purchased a tract of land which was used as a public park, the title in fee to the premises became thereby vested in the purchaser; and this being so, if the provisions of the charter, which declare that such municipal corporation "shall have

the right of possession and control of all public parks * * belonging to said city * * and may lease, sell or dispose of the same for the benefit of the city'' (Special Laws Or. 1903, p. 3), had been considered, a different conclusion would have been reached in the former opinion herein.

The clause of the charter referred to was cited in the brief of the counsel for the city, but it was not thought to be controlling. The pleadings admitted that the park had been dedicated by the city to the public. Whether such gift of the land prevented an alienation or a surrender of the possession of any part of the premises is a question that is unnecessary to discuss, for, if it be conceded that such authority continued notwithstanding the admitted dedication, the contemplated use of a part of the park as a garage does not come within the power granted by the charter. The authority thus to ''lease, sell or dispose,'' which latter word, evidencing the grant of power, is general, following an enumeration of words of specific meaning, thereby makes the *ejusdem generis* rule of statutory construction applicable.

The authority conferred by the language employed limits the right of the city to make a permanent or temporary surrender of the possession of the whole or a part of a public park. In the case at bar the city never yielded the possession of any part of the land, but was itself undertaking to use a small tract for a purpose that necessarily excluded the public, thereby clearly constituting a purpresture.

The petition is denied.          REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT, MR. JUSTICE RAMSEY concur.