Argued and submitted August 31, 1979, reversed April 21, 1980

SUNSET LAKE WATER
SERVICE DISTRICT,
*Respondent,*

*v.*

REMINGTON, et al,
*Appellants.*

(No. CC76-460, CA 12690)

609 P2d 896

Paul G. Robeck, Portland, argued the cause for appellants. On the briefs was Gary M. Bullock, Portland.

Lewis Littlehales, Clatsop County Counsel's Office, Astoria, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

In this declaratory judgment proceeding, plaintiff, a water service district created to provide water to the residents of Sunset Beach, seeks a declaration that it has the right to lay water lines under the streets located within the townsite of Sunset Beach, platted in 1907 by N. W. Bower, now˙deceased. Defendants are the heirs of N. W. Bower, who claim that they have the exclusive right to use the streets for that purpose.[1]

When N. W. Bower mapped and platted the townsite of Sunset Beach, the streets shown on the plat map were dedicated "to the public as public highways, to be and remain free and open to the public." However, the plat reserved to N. W. Bower, his "associates and assigns," "the exclusive right to construct, maintain and operate upon and in said streets telephone, telegraph and electric poles and wires, gas and water pipes, [and] gas and water mains."

The trial court held that the reservation "died with Mr. Bower" because the phrase "associates and assigns" does not include heirs, and because N. W. Bower's "associates, if any, are unknown" and "there [are] no assigns that appear of record." Defendants appeal. We reverse.

The issues presented focus on N. W. Bower's reservation of the exclusive right to use the Sunset Beach streets for a water system: the nature of that interest; whether it is transferrable; if so, whether it has been transferred or has descended to N. W. Bower's heirs; and, assuming the continuing existence of the reservation, whether it is invalid because it violates public

---

[1] The evidence presented at the hearing below indicates that N. W. Bower and his heirs have provided some, albeit limited, water service. N. W. Bower installed windmills to pump water, but the windmills are no longer in use. Defendant Ruth Bower Remington has wells from which she pumps water to several homes located on her own land. The plaintiff does not argue that the exclusive right created by the reservation has been abandoned. *See Bowman v. Bradley,* 127 Or 45, 270 P 919 (1928); *Hoffman v. Dorris,* 83 Or 625, 163 P 972 (1917); Restatement of Property, § 504 (1944).

policy or because it is inconsistent with the dedication itself.

We start with the proposition that dedications should be construed so as to effect the intent of the dedicator. *McCoy v. Thompson,* 84 Or 141, 164 P 589 (1917). Here the language of the reservation makes it clear that N. W. Bower intended to carve out an interest in, and separate from, the dedicated land: he reserved the exclusive right to himself, his "associates and assigns," to make certain uses in the streets included in the plat. There is no reason why a dedicator may not qualify his dedication, and if the dedication is accepted the public takes it subject to the uses reserved. *Smith v. Gardner,* 12 Or 221, 6 P 771, 53 AR 342 (1885). *Cf. Church v. The City of Portland,* 18 Or 73, 22 P 528, 6 LRA 259 (1889). It is conceded here that the dedication was accepted.[2]

The real question is how that interest should be characterized. Plaintiff contends that the interest is an easement appurtenant to all of the property within the townsite because all of it would, presumably, benefit from the uses reserved. Pursuing this line of reasoning, plaintiff contends that each time a lot in the plat was sold, the appurtenant easement was transferred with it, thereby destroying the "exclusivity" of the reservation.[3] However, if that were the intention of the dedicator the reservation was meaningless surplusage because the public could use the streets for those purposes without any special grant or reservation.

Although there is a constructional preference for finding an easement to be appurtenant rather than in gross, *Hall v. Meyer,* 270 Or 335, 527 P2d 722 (1974),

---

[2] This appears to have been a statutory dedication since the plat and map were filed by N. W. Bower and accepted by the county. Sections 2736 - 2738, Bellinger & Cotton's Anno. Code (1901). The parties do not discuss this point.

[3] An appurtenant easement is transferred with the dominant estate. *Tusi v. Jacobsen,* 134 Or 505, 293 P 587, 293 P 939 (1930); *Sweetland v. Grants Pass Power Co.,* 46 Or 85, 79 P 337 (1905).

there is no room for construction here; the easement was not created to benefit the dedicator as the possessor of a particular tract of land. 5 Restatement of Property, § 453. Absent that element, the easement is not appurtenant. Rather, the easement was reserved to the dedicator for commercial purposes, and was personal to him in the sense that it was not an incident of his possession of a dominant tenement. As such it is an easement in gross. 2 American Law of Property 286, § 8.75; 5 Restatement of Property, § 454.

Easements in gross which have commercial value are assignable. *Salene v. Isherwood,* 55 Or 263, 106 P 18 (1910); *Talbot v. Joseph,* 79 Or 308, 155 P 184 (1916); 5 Restatement of Property, *supra,* § 489; 3 Powell, Real Property, *supra,* § 419; 2 American Law of Property, *supra,* § 8.79. Here, the easement has commercial value and, in the absence of an expressed intention to limit its alienability, it has the same attributes of alienability as other interests in property.

Accordingly, if the dedicator had merely reserved the rights to himself without adding the language, "his associates and assigns," the easement would be freely alienable. Unless we can say that the addition of those words was intended to limit alienability, the easement is descendable as are other interests in property. It would, however, require a strained and unnatural construction of the language to treat it as restrictive. The use of the phrase, "his associates and assigns," indicates clearly that the easement reserved was intended to be alienable and we conclude that it is.

An easement has the same duration, and is transferred in the same manner as a like interest in land. Restatement of Property, *supra,* §§ 494, 495; 3 Powell, Real Property, *supra,* § 407. *See also Luckey et ux v. Deatsman,* 217 Or 628, 343 P2d 723 (1959). While the lands in the Sunset Beach plat have been transferred many times since the 1907 dedication, the record before us does not contain any conveyance of the easement itself.

[977]

Since the reservation remained intact during N. W. Bower's life, the question remains whether, as the trial court held, the reservation died with N. W. Bower because the term "assigns" in the reservation did not include "heirs." Plaintiff agrees that "assigns" is a more expansive term than "heirs," and that the term "assigns" "generally comprehends all those who take either immediately or remotely from or under the assignor, whether by conveyance, devise, descent or act of law." Black's Law Dictionary 154 (4th ed 1957). *See also* Webster's Third New International Dictionary (Unabridged 1976) ("assignee" is "one to whom a right of property is legally transferred."); *Udall v. Battle Mountain Company,* 385 F2d 90, 95-96 (9th Cir 1967), US *cert den* 390 US 957 (1968).

Plaintiff contends, however, that reservations of this kind should be strictly construed and, when this reservation is so construed, it was strictly personal to N. W. Bower and died with him. Even if we adopt a strict construction, we cannot reach that result without reading into the reservation words which are not there: either limiting the reservation to a life estate, or limiting the alienability to the lifetime of N. W. Bower. We are not free to do that. ORS 42.230.

"Unless an easement in gross is limited by the terms of its creation to a use to be enjoyed by its grantee only, what happens to it upon the intestate death of the owner depends upon the nature of the estate in it held by the owner of it. If that estate was in fee, the easement will descend as real property to his heirs. If it was a life estate measured by the life of the owner, his death will cause it to come to an end. If it was an interest the duration of which was measured by the life of another, it will pass in accordance with the provisions of statutes providing for the intestate succession to life estates. If it was measured in duration by a definite period of time, it will be distributed to the next of kin in accordance with the rules applicable to intestate succession to chattels real." 2 American Law of Property 286-87, § 8.76, (Footnote omitted.)

Here, N. W. Bower's estate in the easement was not limited in duration either by his or another's life, and was, therefore, in the nature of an interest in fee. The reservation is alienable and, although it does not specifically mention "heirs," language of inheritance is not necessary to create a fee simple interest. ORS 93.120.[4] Thus, the easement is in the nature of a fee simple estate, is inheritable, *Ruhnke v. Aubert,* 58 Or 6, 113 P 38 (1911), and passed directly to N. W. Bower's heirs upon his death, *State v. O'Day,* 41 Or 495, 69 P 542 (1902), unless the reservation was not valid.

Plaintiff presents a variety of challenges to the validity of the reservation.

First, it relies on a statute, passed in 1909, which provided that, before any plat could be recorded, the plat must have been approved by municipal authorities and that all streets in the plat must have been dedicated to the public use "without reservation or restriction whatever." Or Laws 1909, ch 144, § 2.[5] However, the validity of the reservation must be determined as of the time it was created in 1907, and the 1909 statute clearly does not purport to apply to plats theretofore recorded and accepted.

---

[4] "The term 'heirs,' or other words of inheritance, is not necessary to create or convey an estate in fee simple. * * *" This statute dates back to Deady's Code of 1854. Ch. VII, Deady's Code, § 4.

[5] Or Laws 1909, ch 144, § 2 provided:

"Before any plat can be recorded, for covering land within the corporate limits of any town or city, it must be approved by the city engineer, or city surveyor, if there be any, otherwise by the county surveyor, if outside the corporate limits of any town or city, and all plats must be approved by the county assessor and the county court in which county said property is located, said officers seeing that the streets and alleys are laid out so as to conform to the adjoining plats, and that they are dedicated to the public use, without any reservation or restriction whatever, and that the name is proper, so as to comply with the provisions of Section 1, also see that all taxes and assessments have been paid."

Accepting plaintiff's contention that the 1909 statute and its present-day counterpart, ORS 92.090,[6] evidence the state's public policy against accepting plats containing reservations like the one here involved, we are not directed to any evidence of such a policy existing in 1907. To the contrary, the fact that the plat was accepted at that time, and the fact that no subsequent legislation has clearly purported to invalidate pre-1909 reservations of this kind, indicate that pre-1909 reservations are not affected by the subsequent legislation.

Plaintiff also relies on ORS 451.550, which gives a water district the power to "[c]onstruct service facilities in and on any public street, highway or road."[7] That statute merely grants certain powers to water districts to permit them to function; it does not

---

[6] This statute has been amended from time to time, the current version of which, ORS 92.090, provides:

"* * * * *

"(3) No plat of a proposed subdivision and no map of a proposed major partition shall be approved unless:

"(a) Streets and roads for public use are dedicated without any reservation or restriction other than reversionary rights upon vacation of any such street or road *and easements for public utilities.*

"* * * * *

"(e) The plat or map contains a donation to the public of all common improvements, including but not limited to streets, roads, parks, sewage disposal and water supply systems, the donation of which was made a condition of the approval of the tentative plan for the subdivision or the major partition." (Emphasis supplied.)

[7] ORS 451.550(6) provides:

"For the purpose of carrying out the powers granted to the district under other provisions of ORS 451.410 to 451.600, the district *may:*

"* * * * *

"(6) Construct service facilities in and on any public street, highway or road and for this purpose enter upon the street, highway or road, make all necessary and proper excavations, and thereafter restore the street, highway or road to its proper condition. However, the consent of the appropriate city, county or state authorities, as the case may be, shall first be obtained and the conditions of such consent complied with." (Emphasis supplied.)

[980]

purport to take any property rights from those who own them.

Finally, plaintiff points to ORS 758.010(2), which gives a county authority over the location of utility lines on or under a county highway.[8] By its terms, this statute deals only with control over the precise location of utility lines; it does not limit the class of persons or corporations who may place lines under the streets. ORS 758.010(1).[9]

The statutes upon which the water district relies do not invalidate this reservation.

Plaintiff also bases its challenges to the validity of this reservation upon the general rule that a reservation is invalid if it is inconsistent with the purpose of the dedication. *Darling v. Christensen*, 166 Or 17, 109 P2d 585 (1941). (In *Darling*, the dedicator attempted to

---

[8] ORS 758.010(2) provides:

"The county courts or boards of county commissioners of the several counties through which such lines, fixtures or facilities may be constructed, if the road upon which such lines, fixtures or facilities are constructed is a county highway, and the Department of Transportation, if the road upon which such lines, fixtures or facilities are constructed is a state highway, *has power and authority to designate the location upon such roads and highways, outside of cities, where such lines, fixtures and facilities may be located,* and may order the location of any such line, fixture or facility to be changed when such court, board or department deems it expedient. Any line, fixture or facility erected or remaining in a different location upon such highway than that designated in any order of such court, board or department is a public nuisance and may be abated accordingly." (Emphasis supplied.)

[9] ORS 758.010(1) provides:

"Except within incorporated cities, *any person or corporation has a right and privilege to construct, maintain and operate its water, gas, electric or communication service lines, fixtures and other facilities along the public roads, highways and streets of the state,* or across rivers or over any lands belonging to the state, free of charge, and over lands of private individuals, as provided in ORS 772.210. Such lines, fixtures and facilities shall not be constructed so as to obstruct any highway, street or navigable stream." (Emphasis supplied.)

ORS 772.210 authorizes any public utility or electrical cooperative association to condemn private property to permit construction of service facilities.

dedicate a public street which could be used only by adjoining landowners, not the public.) While a dedicator may restrict the public use to any reasonable extent or create a reasonable reservation, *Church v. The City of Portland,* 18 Or 73, 79, 22 P 528, 6 LRA 259 (1889).

"* * * [T]he dedicator cannot attach a condition or reservation which will destroy the chief characteristic of the purpose of the dedication or take the property from the control of or impose burdens on the duly authorized public officers, or a condition which is against public policy. * * *" 11 McQuillin, Municipal Corporations, § 33.10, at 657-58 (3rd ed 1964) (footnotes omitted.)

While the courts of this state have not considered the validity of a reservation of the exclusive right to place utility lines, many other courts have. The cases reach conflicting results,[10] and we do not find them helpful. The argument is a variant of that based on public policy and, as we have pointed out, in this state there was no statute in 1907 prohibiting a reservation of the exclusive right to construct and operate a water system. We are not prepared to hold that such a reservation contravened public policy at that time.

Plaintiff has been unable to identify any public policy, existing in 1907, which would prohibit this reservation, and we find no basis for concluding that the right to operate a water system was such an inherent part of the public use of streets in 1907 that the reservation of that right is inconsistent with the

---

[10] *North Spokane Irrig. Dist. v. Spokane County,* 86 Wash 2d 599, 547 P2d 859 (1976) (reservation valid); *Jones v. Carter,* 45 Tex Civ App 450, 101 SW 514 (1907) (invalid); *City of Beaumont v. Calder Place Corp.,* 143 Tex 244, 183 SW2d 713 (1944) (invalid); *Gwin v. City of Greenwood,* 150 Miss 656, 115 So 890, 58 ALR 849 (1928) (valid); *Wofford Heights Associates v. County of Kern,* 219 Cal App 2d 34, 32 Cal Rptr 870 (1963) (valid); *City of Jacksonville v. Shaffer et ux.,* 107 Fla 367, 144 So 888 (1932) (valid); *Canda Realty Co. v. Carteret,* 136 NJ Eq 550, 42 A2d 859 (1945) (implication that reservation valid); *City of Camdenton v. Sho-Me Power Corp.,* 361 Mo 790, 237 SW2d 94 (1951) (invalid); *Grosse Point Shores v. Ayers,* 254 Mich 58, 235 NW 829 (1931) (invalid); *Kuehn v. Village of Mahtomedi,* 207 Minn 518, 292 NW 187 (1940) (invalid); *Village of Lake Bluff v. Dalitsch,* 415 Ill 476, 114 NE2d 654 (1953) (invalid).

dedication of the streets. As the plaintiff's statutory arguments establish, the reservation does not strip municipal authorities of their control over the streets. *See* ORS 758.010(2), *supra.*

The Oregon cases reflect a broad view of the "reasonable" restrictions which a dedicator may place on the public use. *Church v. The City of Portland, supra; Wessinger v. Mische,* 71 Or 239, 142 P 612 (1914); *Hyland v. City of Eugene,* 179 Or 567, 173 P2d 464 (1946). Given this broad view, we hold that N. W. Bower's reservation is not clearly unreasonable, that it is not inconsistent with the dedication, and that it is valid.

It follows that the trial court erred in entering a judgment and decree for the plaintiff. N. W. Bower's heirs are the "assigns" of their ancestor's valid reservation.

Reversed.