Argued and submitted February 26, 2020, reversed and remanded on appeal
and cross-appeal November 3, 2021

Ernest W. BLOCK, Jr.,
*Plaintiff-Respondent
Cross-Appellant,*
*and*

Marvin C. LEACH
and Debra J. Leach,
*Plaintiffs-Respondents,*
*and*

Ron D. HILLER et al.,
*Plaintiffs,*

*v.*

DEA PROPERTIES-2 LLC,
*Defendant-Appellant
Cross-Respondent.*

Tillamook County Circuit Court
17CV37076; A169127

501 P3d 545

Plaintiff Block owns two properties that benefit from a beach-access easement over the property of defendant, DEA Properties-2, LLC (DEA). Block assigned his easement—but neither of his properties—to plaintiffs Marvin and Debra Leach in an effort to allow the Leaches to use the beach-access easement. Block and the Leaches then sought a declaration that that assignment, among others, was valid and effective, and the trial court agreed. DEA appealed a general judgment entered following a bench trial, contending that the trial court erred in holding that the easement can validly be assigned to someone who does not own the dominant or servient estate. Block cross-appealed, contending that the court erred in granting relief on DEA's counterclaim for an implied easement over a road on Block's parcel. *Held*: The deed unambiguously created an ordinary appurtenant easement, which cannot be severed and transferred separately from the dominant estate. On appeal, therefore, the trial court erred in declaring that the easement assignment agreements were valid and enforceable. On cross-appeal, the question that the trial court was required to answer was whether an easement arose as an inference of the intention of the parties to a conveyance of land based on the circumstances existing at the time of the conveyance in December 1997. The Court of Appeals reversed and remanded for the trial court to reevaluate the evidence under the correct legal standard.

Reversed and remanded on appeal and cross-appeal.

Jonathan R. Hill, Judge.

Steve C. Morasch and Landerholm, P. S. filed the briefs for appellant-cross-respondent.

Gregory S. Hathaway argued the cause for respondent-cross-appellant and respondents. Also on the briefs was Hathaway Larson LLP.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeHOOG, J.

Reversed and remanded on appeal and cross-appeal.

**DeHOOG, J.**

This appeal arises from a dispute between neighbors. Plaintiff Block owns two properties that benefit from a beach-access easement over the property of defendant, DEA Properties-2, LLC (DEA). Block assigned his easement—but neither of his properties—to plaintiffs Marvin and Debra Leach in an effort to allow the Leaches to use the beach-access easement. Block and the Leaches then sought a declaration that that assignment, among others, was valid and effective, and the trial court agreed.

DEA appeals a general judgment entered following a bench trial, contending that the trial court erred in holding that the easement can validly be assigned to someone who does not own the dominant or servient estate. Block cross-appeals, contending that the court erred in granting relief on DEA's counterclaim for an implied easement over a road on Block's parcel.[1] As explained below, we conclude that the court erred in holding that the grant of an appurtenant easement to owners of certain property and their "heirs, successors, and assigns" indicates an intention to make the appurtenant easement assignable separately from ownership of the dominant estate. We also conclude that the trial court erred in determining that DEA has an implied easement over the road on Block's parcel. Accordingly, we reverse and remand.

We begin by providing some basic background facts and the specific facts relevant to DEA's appeal. The following facts are undisputed.

In 1994 and 1995, the Hatch heirs partitioned a piece of beachfront property into several parcels. In 1997, they sold parcel 2 to DeCarrico, reserving "A beach access Easement along the Southerly 5 feet of Parcel 2 * * *, in favor of the owners, their heirs, successors and assigns, of the following described property, in Tillamook County, Oregon[.]" The "following described property"—the property to whose owners the easement is reserved—is a list of four properties. Two of those properties are other parcels in the Hatch

---

[1] The judgment also denied the Leaches' claim for a prescriptive easement for beach access. That claim is not at issue on appeal.

heirs' partition; the other two are other neighboring proper-ties. We refer to parcel 2 as the servient estate and the four properties in whose favor the easement was reserved as the dominant estates.[2]

As a general matter, DeCarrico allowed neighbors to use the beach-access path on parcel 2. In approximately 2015, DeCarrico sold parcel 2 to DEA. Anderson, the prin-cipal of DEA, took steps to limit the use of the easement to the owners of the dominant estates.

Plaintiff Block owns two of the dominant estates and one other nearby property, which is known as the green house. In 2017, in documents entitled "Easement Assignment Agreement for Beach Access," he purported to assign the easement to four couples who do not own domi-nant estates, including the Leaches. At the same time, the owner of another of the dominant estates, the Hiller Family Trust, executed an Easement Assignment Agreement for Beach Access in favor of Block as the owner of the green house.

Block, the trustee of the Hiller Family Trust, the Leaches, and the other couples to whom Block assigned the easement brought this declaratory-judgment action, seeking, among other things, a declaration that they had the right to use the easement under the assignment agree-ments. In cross-motions for summary judgment, the parties disputed the validity of the Assignment Agreements for Beach Access. DEA contended that the beach-access ease-ment was an appurtenant easement and, therefore, could not be assigned or otherwise transferred to anyone other than the owners of the dominant estates. DEA asserted that the term "assigns" in the text of the reservation—which, as set out above, reserves the easement "in favor of the own-ers, their heirs, successors and assigns, of the following described property"—is standard text indicating that the easement runs with the land.

---

[2] At trial, there was testimony that the deed to a fifth property granted the beach access easement to that property even though that property was not listed as a dominant estate in the deed to parcel 2. That fifth dominant estate is not at issue in DEA's appeal, so we do not discuss it further.

Plaintiffs did not dispute that the beach-access easement was an appurtenant easement. They contended, however, that the inclusion of the word "assigns" in the text unambiguously indicated the parties' intention to allow the easement to be assigned separately from ownership of the dominant estates.

Relying on cases involving easements in gross, the trial court agreed with plaintiffs. However, relying on the same cases, the court held that, although the purported assignments were valid, there remained a genuine issue of material fact as to whether, given the number of assignments made, they collectively exceeded the scope of the original easement, which was limited to reasonable use of the property.

The trial court therefore denied both motions for summary judgment and held a trial to determine whether the assignments would result in unreasonable use of the property. Before trial, Block rescinded three of his assignments, and the plaintiffs whose assignments were rescinded before trial, as well as the trustee of the Hiller Family Trust, were removed from the case. Thus, at trial, and again on appeal, the only assignments at issue are Block's assignment to the Leaches and the Hiller Family Trust's assignment to Block as owner of the green house.

At trial, DEA again contended that the easement could not be assigned separately from the dominant estates, and the court again rejected that argument. Ultimately, the trial court held that the use of the easement that would result from the remaining assignments was reasonable and entered judgment on the beach-access easement claim in favor of Block and the Leaches, declaring that the two assignments at issue "are valid and enforceable."

DEA appeals, asserting that "[t]he owner of the beneficial rights under an appurtenant easement cannot unilaterally expand the easement by assigning the beneficial rights to additional properties." DEA also argues that the word "assigns" in the deed refers to assignees of the property, not assignees of the easement separately from ownership of the property. Thus, DEA contends, the trial court erred in declaring the assignments to be valid and

enforceable. For their part, Block and the Leaches contend that the trial court correctly concluded that the inclusion of the word "assigns" unambiguously indicates the parties' intention to allow separate assignment of the beach-access easement.

As explained below, we agree with DEA that the easement created in the deed to parcel 2 is an appurtenant easement that cannot be assigned separately from an interest in the dominant estates. Accordingly, the trial court erred in holding that the assignments were valid and enforceable.

"In reviewing a trial court's determinations following a bench trial, we review the trial court's explicit and implicit findings of fact for any evidence in the record to support them, and the legal consequences of those facts for legal error." *Pistol Resources, LLC v. McNeely*, 312 Or App 627, 629, 496 P3d 28 (2021) (internal quotation marks omitted). As noted above, the facts relevant to DEA's appeal are undisputed; accordingly, our task here is to review the trial court's legal conclusions for legal error.

"'An easement is a right in one person to do certain acts on land of another.'" *Miller v. Jones*, 256 Or App 392, 397, 302 P3d 812 (2013) (quoting *Bloomfield v. Weakland*, 224 Or App 433, 445, 199 P3d 318 (2008), *rev den*, 346 Or 115 (2009)). "An appurtenant easement 'is one where the land of one person, the servient [estate], is subjected to some use or burden for the benefit of the lands of another person, the dominant [estate].'" *Id.* at 399 (quoting *Bloomfield*, 224 Or App at 445). "'The right is enjoyed by the owner of the dominant estate by virtue of his ownership of the land. If the dominant estate is sold or otherwise transferred to another, the easement over the servient land is transferred as well.'" *Id.* (quoting *Braat v. Aylett*, 278 Or 549, 552, 564 P2d 1030 (1977)).

In *Sunset Lake v. Remington*, 45 Or App 973, 977, 609 P2d 896 (1980), we held that, if an easement does not subject the land to a use or burden for the benefit of another piece of land but, instead, subjects land to a use or burden that is personal—separable from the creator's ownership

of any particular land—it is not an appurtenant easement; rather, it is an easement in gross:

> "[T]he easement was not created to benefit the dedicator as the possessor of a particular tract of land. Absent that element, the easement is not appurtenant. Rather, the easement was reserved to the dedicator for commercial purposes, and was personal to him in the sense that it was not an incident of his possession of a dominant [estate]. As such it is an easement in gross."

*Id.* (internal citations omitted; citing 5 *Restatement (First) of Property* §§ 453, 454 (1944); A. James Casner ed., 2 *American Law of Property* 286, § 8.75 (1952)).

Here, the trial court concluded—and the parties do not dispute—that the reservation in the deed to parcel 2 creates an appurtenant easement. We agree. As explained above, an appurtenant easement creates a right that is "enjoyed by the owner of the dominant estate by virtue of his ownership of the land." *Miller*, 256 Or App at 399 (internal quotation marks omitted); *see also Sunset Lake*, 45 Or App at 977 (an easement was in gross rather than appurtenant because it "was personal to [the creator] in the sense that it was not an incident of his possession of a dominant tenement"). The easement at issue here is reserved "in favor of the owners, their heirs, successors and assigns, of the following described property." The benefit of the easement is enjoyed by the owners of the dominant estates by virtue of their ownership of the land; thus, it is an appurtenant easement.

The deed's creation of an appurtenant easement is incompatible with the trial court's conclusion that the easement can be assigned separately from ownership of the dominant estates. *See Jantzen Beach Associates v. Jantzen Dynamic Corp.*, 200 Or App 457, 464, 115 P3d 943 (2005), *adh'd to as modified on recons*, 204 Or App 68, 129 P3d 186, *rev den*, 341 Or 244 (2006) (holding that, because "the property interest reflected in the restrictive covenant" was an appurtenant easement, it "is not severable from the land, nor is it personal to plaintiff"). If the easement were assigned separately from the land, it would cease to be an appurtenant easement, because the benefit of the easement would

not be enjoyed by the assignees by virtue of their ownership of the land. As to the assignees, the easement would be in gross, while it would remain appurtenant as to the owners of the dominant estates. The parties have not identified any Oregon case that contemplates a hybrid appurtenant/ in gross easement of that kind, nor are we aware of such authority.[3]

However, this case does not require us to decide whether a hybrid appurtenant/in gross easement can exist under Oregon law, because, as explained below, the deed to parcel 2 does not express any intention to create that type of servitude.[4] Rather, it unambiguously expresses the parties' intention to create a standard appurtenant easement.

---

[3] As New Jersey's intermediate appellate court explained in a case presenting the same issue,

"Treatises dealing with the topic are in universal agreement that, absent a clear intent to the contrary in the instrument creating the easement, an easement appurtenant benefits only those with a possessory interest in the dominant estate, and such benefit cannot be assigned to third parties independent of the dominant land to which it is appurtenant: 4 *Powell on Real Property* § 34.15 at 34-161-161-62 (Wolf ed. 2009) (In discussing the effect of subdividing the dominant tenement, '[s]ome increase in burden can result from the increase in the number of users, but such increase in burden is kept within limits by the fact that *any easement appurtenant has its total extent defined by the needs of the dominant estate.*'); *Restatement (Third) of Property: Servitudes* § 4.11 (2000) ('Unless the terms of the servitude determined under § 4.1 provide otherwise, *an appurtenant easement or profit may not be used for the benefit of property other than the dominant estate.*'); Roger A. Cunningham et al., *The Law of Property* § 8.10 at 461 (1984) ('The word "appurtenant" signifies that an easement appurtenant is attached to and a part of the right of possession of its dominant tenement. *** Therefore, any act that is sufficient to transfer title or even rightful possession of the dominant tenement will carry the easement rights with it. *** *Nor may the easement be transferred separately from the dominant tenement, for "appurtenant" also signifies that the easement may serve only the dominant tenement, as we have seen.*'); 2 *American Law of Property* § 8.73 at 285 (1952) ('Even rarer are cases in which the intention appears to permit what was created as an easement appurtenant to be changed into an easement in gross. Hence it will be assumed, *in the absence of an affirmative showing to the contrary, that an appurtenant easement cannot be divorced from the dominant tenement in such a way as to permit it to become an easement in gross or become appurtenant to another tenement.*') (Emphasis added)."

*Rosen v. Keeler*, 411 NJ Super 439, 452-53, 986 A2d 731, 740 (NJ App Div 2010) (internal footnote omitted).

[4] The *Restatement (Third) of Property (Servitudes)* (2000) contemplates that parties may create such a hybrid easement, although it applies a presumption that that is not what parties intend. *Id.* § 5.6 ("Except as provided in subsections (1) through (3), an appurtenant benefit may not be severed and transferred

"In construing an easement, our task is to discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner." *Bloomfield*, 224 Or App at 446-47. "To determine an easement's purpose, we first look to the words of the easement, viewing them in the context of the entire document; if the words clearly express the easement's purpose, our analysis ends." *Knight v. Nyara*, 240 Or App 586, 595, 248 P3d 36 (2011). "If the wording at issue is uncertain or ambiguous, then the court must determine the intent of the original parties by examining the relevant surrounding circumstances." *Tipperman v. Tsiatsos*, 327 Or 539, 545, 964 P2d 1015 (1998). "The goal is always to give effect to the parties' intentions." *Bloomfield*, 224 Or App at 447.

As set out above, the deed to parcel 2 reserves "A beach access Easement along the Southerly 5 feet of Parcel 2 \*\*\*, in favor of the owners, their heirs, successors and assigns, of the following described property[.]" The trial court concluded, and plaintiffs contend on appeal, that the easement was assignable separately from ownership of the dominant estates because the reservation refers to the owners' "assigns." Plaintiffs reason that the reference to the owners' "successors" is sufficient on its own to make the easement run with the land and, therefore, the inclusion of the term "assigns" must have been intended to convey a different meaning. They posit that the different meaning that the parties intended for "assigns" was to allow the easement to be severed from the land and assigned separately from the dominant estates.

---

separately from all or part of the benefited property. \*\*\* (3) Appurtenant benefits made severable and transferable by the terms of the servitude may be severed and transferred."); *id*. § 5.6 comment a. ("Permitting severance and separate transfer of the benefit would generally permit conversion of an appurtenant benefit into a benefit in gross, imposing a greater burden on the property. Accordingly, the basic rule stated in this section is that appurtenant benefits may not be severed and transferred separately from all or part of the benefited property. The rule reflects a presumption as to the likely intent of the parties who created the servitude rather than a public policy against conversion of appurtenant benefits into benefits in gross."); *see also Rosen*, 986 A2d at 739, 741 (in New Jersey, where the courts have adopted the approach set out in the *Restatement (Third) of Property (Servitudes)*, "an easement appurtenant cannot be transferred or assigned for the benefit of another tenement separate from the dominant estate unless the instrument creating it demonstrates a clear intent to grant such a right").

For several reasons, we reject that argument. First, "successors and assigns" is standard language that is often included in easements and servitudes as part of a habendum clause defining the scope of the easement or servitude—specifically, making the easement or servitude run with the land. *See, e.g.*, *Westwood Homeowners Ass'n, Inc. v. Lane County*, 318 Or 146, 149, 152, 864 P2d 350 (1993) (Covenants, Conditions, and Restrictions are appurtenant servitudes; the declaration provided that they "shall run with *** the real property and be binding on all parties having any right, title or interest in the *** properties or any part thereof, their heirs, successors and assigns"); *Fischer v. Walker*, 246 Or App 589, 592, 595, 266 P3d 178 (2001) (an instrument that granted an easement to specified people, "their heirs, successors and assigns" that was "for the use and benefit of" Tax Lot 600 and "appurtenant thereto" created an appurtenant easement for the benefit of Tax Lot 600).

To the extent that each word in a habendum clause must have independent meaning—a premise on which we express no opinion—"assigns" does have meaning independent of the terms "heirs" and "successors." In response to the same argument in a very similar context—where a party argued that the term "assigns" in the grant of an appurtenant easement made the easement assignable separately from the dominant estate—New Jersey's intermediate appellate court explained as follows:

> "On this point, an example from the *Restatement (First) of Property* § 487 comment h, illustration 6 (1944) *** provides a concrete example of how one might be an 'assign' under the terms of the Declaration without being a 'successor in title.' The illustration states that if the owner of a dominant estate entered into a lease for a term of years with a tenant, the lease document would entitle the tenant to possession of the land and thus also entitle the tenant to use of the easement. The tenant would gain an assignment of the easement rights through his or her leasehold interest while not succeeding to the fee simple title held by the owner. Thus, courts need not interpret one or the other of the two terms to be without meaning because effect can be given to each."

*Rosen v. Keeler*, 411 NJ Super 439, 454-55, 986 A2d 731, 741-42 (NJ App Div 2010). We agree with the *Rosen* court that, as the *Restatement* example illustrates, a property owner's "assigns" refers to a different group from the owner's "successors." Thus, reasoning that the parties intended the reference to the owners' "heirs, successors and assigns" simply to make the easement run with the land does not result in surplusage.

Those considerations alone are enough for us to conclude that the parties unambiguously expressed their intention to create an ordinary appurtenant easement, not a hybrid appurtenant/in gross easement. However, we also note that the text of the reservation indicates that the "assigns" that it refers to are assignees "of the property," not assignees of the easement alone. Again, the deed reserves "A beach access Easement along the Southerly 5 feet of Parcel 2 \*\*\*, in favor of the owners, their heirs, successors and assigns, of the following described property[.]" The phrase "of the following described property" appears after "the owners, their heirs, successors and assigns"; that placement strongly suggests that the phrase applies to all of the items in the list. If the parties had intended the qualifier "of the following described property" to apply only to the owners, they would likely have—at a minimum[5]—placed "of the following described property" directly after "owners"; the reservation would then have been "in favor of the owners of the following described property, their heirs, successors and assigns," providing at least some support for plaintiffs' reading.

In sum, the deed unambiguously creates an ordinary appurtenant easement, which cannot be severed and transferred separately from the dominant estate. *Jantzen Beach Associates, LLC*, 200 Or App at 464 (an appurtenant easement "is not severable from the land"). The trial court erred in relying on cases concerning easements in gross, which are personal and transferrable separately from interests in land. *Sunset Lake*, 45 Or App at 977 ("Easements

---

[5] As noted above, we have concluded that the inclusion of the terms "successors and assigns" indicates an intention to create an ordinary appurtenant easement. If the parties to an easement intended to create a novel hybrid appurtenant/in gross easement, we doubt they would express that intention merely through placing "of the property" after "owners."

in gross which have commercial value are assignable."). Accordingly, the court erred in declaring that the easement assignment agreements were valid and enforceable.

We turn, briefly, to Block's cross-appeal. At trial, the court heard evidence on DEA's counterclaim for an implied easement over a driveway on parcel 1, which is now owned by Block. The court held that DEA had established the existence of an implied easement by clear and convincing evidence and entered judgment in favor of DEA on its counterclaim. Block appeals, contending that the court erred in determining that DEA has an implied easement over the driveway.

> "When land in one ownership is divided into separately owned parts by a conveyance, an easement may be created *** by implication from the circumstances under which the conveyance was made alone. That is, an implied easement is created when the circumstances that exist at the time of severance of a parcel establish that the grantor of the parcel intended to create an easement."

*Manusos v. Skeels*, 263 Or App 721, 723-24, 330 P3d 53 (2014) (omission in *Manusos*; internal quotation marks and citations omitted). "[S]everance of a parcel refers to the division of ownership of land[.]" *Id.* at 730 (internal quotation marks omitted).

In this case, the relevant severance took place in 1997, when the Hatch heirs sold parcel 2 to DeCarrico and retained ownership of parcel 1. However, in reaching its determination that an implied easement exists, the trial court relied significantly on events and circumstances that took place later. For example, it relied on the beliefs and actions of Block and Anderson, who purchased their properties after 1997; it evaluated the necessity of the easement based on the circumstances at the time of trial, rather than the circumstances that existed in 1997; and it considered the use of the property and the parties' knowledge of that use since 1997, rather than at the time of the Hatch heirs' 1997 conveyance to DeCarrico. That was error.

The question before the court was whether an easement arose "as an inference of the intention of the parties to a conveyance of land"—here, the Hatch heirs and

DeCarrico—"based on the circumstances existing at the time of the conveyance"—here, in December 1997. *Eagles Five, LLC v. Lawton*, 250 Or App 413, 424, 280 P3d 1017 (2012). As a result of the court's incorrect legal analysis, it did not make explicit or implicit findings of fact on many of the relevant issues. Accordingly, we reverse and remand for the trial court to reevaluate the evidence under the correct legal standard.

Reversed and remanded on appeal and cross-appeal.